UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:   NEURONTIN MARKETING AND
         SALES PRACTICES LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THIS DOCUMENT RELATES TO:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ASSURANT HEALTH, INC., et al. v. PFIZER INC., et al.,
Docket No. 05-10535-PBS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MDL Docket No. 1629

Master File No. 04-10981

Judge Patti B. Saris

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR STAY
OR, IN THE ALTERNATIVE, FOR ENLARGEMENT OF TIME**

Defendants Pfizer Inc. and Warner-Lambert Company ("Defendants") submit this

memorandum in support of their emergency motion to stay all proceedings in the tag-along

action entitled <u>Assurant Health, Inc., et al. v. Pfizer Inc.</u>, Docket No. 05-10535-PBS ("<u>Assurant</u>")

or, in the alternative, for an enlargement <u>sine die</u> of the time within which Defendants must

answer, move, or otherwise respond to the Complaint in <u>Assurant</u>.

## BACKGROUND AND FACTS

**The Claims In And History Of <u>Assurant</u> And
The New Jersey Actions Involving Neurontin**

    **Summary of Claims**.  <u>Assurant</u> was filed in the Superior Court of New Jersey on or

about November 24, 2004.  The plaintiffs in Assurant are insurance companies and other entities

that allegedly have purchased Neurontin or that are pursuing claims on behalf of entities that

allegedly have purchased Neurontin.  The plaintiffs allege, as do all of the other plaintiffs in

MDL 1629, that Defendants engaged in a "false, deceptive, and misleading" off-label marketing

program for Neurontin.  (Chaffin Dec., Ex. A at 1, 14.)  They also allege that Defendants

engaged in anticompetitive behavior with respect to Neurontin, consisting primarily of the pursuit of allegedly meritless litigation based on the patents on Neurontin.  (Chaffin Dec., Ex. A at 1, 18.)  Causes of action under state antitrust and consumer protection statutes are alleged, as are claims for unjust enrichment and tortious interference with prospective economic advantage and business relationships.   (Chaffin Dec., Ex. A.)

      **The Related Litigation**.  In re Neurontin Antitrust Litigation, MDL Docket No. 1479 (the "Neurontin Antitrust Litigation"), is pending in the United States District Court for the District of New Jersey.  In that case, a number of insurers and others assert antitrust claims based on the allegation that Pfizer Inc. pursued patent infringement actions against generic pharmaceutical manufacturers that were objectively baseless.  Thus, the same antitrust theory that the plaintiffs in Assurant have alleged is at issue in the Neurontin Antitrust Litigation. (Chaffin Dec., Ex.  B at 1, 5-7.)

      Significantly, on or about November 1, 2002, the New Jersey court stayed the proceedings in the Neurontin Antitrust Litigation until the resolution of motions for summary judgment in yet a third matter involving Neurontin, In re Gabapentin Patent Litigation, MDL Docket No. 1384 (the "Neurontin Patent Litigation").  (Chaffin Dec., Ex. C.)  In the Neurontin Patent Litigation, the validity of the patents on Neurontin is at issue.  (Chaffin Dec., Ex. B at 2-5.)  In staying the proceedings in the Neurontin Antitrust MDL, the New Jersey Court recognized that the antitrust claims will turn on, and therefore should await, the sister court's determinations as to the validity of the patents.  (Chaffin Dec., Exs. B, C.) This approach is logical and appropriate, because if Pfizer wins its patent infringement cases, the patent litigation was indisputably not sham.  See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.,

Inc., 508 U.S. 49, 60 n.5 (1993) ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham.").

**The Removal and Transfer of Assurant.**  Defendants removed Assurant to the United States District Court for the District of New Jersey.  They subsequently requested that the Judicial Panel on Multidistrict Litigation ("JPML") transfer the case to this Court.  (Chaffin Dec., Ex. D.)  On February 8, 2005, the JPML issued a Conditional Transfer Order ("CTO") covering Assurant and six other cases.  The CTO provides that Assurant "involve[s] questions of fact which are common to the actions previously transferred to the District of Massachusetts and assigned to Judge Saris . . .," and that the CTO would become final unless an objection to it were filed within 15 days after February 8, 2005.  (Chaffin Dec., Ex. E.)  While the plaintiffs in Assurant initially objected to the CTO, they failed to file the required motion and brief to vacate the CTO.  The plaintiffs subsequently conceded that they no longer contest transfer of Assurant to the MDL.  (Chaffin Dec., Exs. F, G.)  As a result, on March 15, 2005, the JPML issued an Order Lifting Stay of Conditional Transfer Order, which transferred Assurant to this Court for inclusion in these proceedings.  (Chaffin Dec., Ex. F.)  The case was docketed here on March 21, 2005.

**The Proceedings Concerning Defendants' Response.**  While the removal and transfer process was underway, the clock was running on Defendants' time to respond to the Complaint in Assurant.  On March 14, 2005, one day before the stay of the CTO was lifted, United States Magistrate Judge Madeline C. Arleo of the United States District Court for the District of New Jersey heard the parties on a request by Defendants for additional time to respond to the Complaint.  (Defendants were forced to involve the New Jersey court because counsel for Assurant, although certainly aware that the case was about to be transferred to this Court, were

3

insisting on a response March 17.)  She ordered that Defendants have until the earlier of (a) April

15, 2005, or (b) ten (10) days after transfer of <u>Assurant</u> to this Court to respond to the Complaint.

(Chaffin Dec., Ex. H.)  Assuming both that Magistrate Judge Arleo's Order applies in this Court,

and that a response to the Complaint is required (which Defendants dispute), the conservative

response date is today, because the stay on the CTO was lifted on March 15, 2005.  (This

deadline is the reason Defendants have moved on an emergency basis.)

**The Case Management Orders**

The Court has entered three Case Management Orders ("CMOs") in this case.  (Docket

## 15, 47, 62.)  The first CMO was entered on December 16, 2004, "in order to promote judicial

economy and avoid duplication," and based on a finding that "it would be appropriate to provide

for consolidation and/or coordination of all actions filed, removed to, or transferred to this

District . . . .."  (Docket # 15 at 3.)  It applies to all cases "that become a part of this proceeding by

virtue of being filed in, removed to, or transferred to this Court (including cases transferred

pursuant to Local Rules[,] 28 U.S.C. § 1404(a), or 28 U.S.C. § 1407)."  (Docket # 15 at 4-5.)

Because <u>Assurant</u> was transferred to this Court pursuant to 28 U.S.C. § 1407, the first CMO

applies to it.

The first CMO established the procedure and schedule pursuant to which all plaintiffs

were to re-plead on a consolidated and/or amended basis, Defendants were to move to dismiss

the amended and consolidated complaints, and the parties were (and are) to brief the motions.

The provisions concerning re-pleading obviously were designed to coordinate and consolidate

the dozens of actions that had been transferred to this Court.  It would also appear that, all things

considered, the Court's intention was that the pleadings filed pursuant to the re-pleading

provisions of the first CMO would be the only complaints on which this case would proceed.

Indeed, Defendants' belief is that the first CMO was intended to preclude the fracturing and complication of these proceedings via the pursuit of tag-along actions on a separate basis, and that it places the burden on plaintiffs to seek relief from that intention from the Court.  (Docket # 15 at 10; Chaffin Dec., ¶ 10.)

Pursuant to the first CMO, a First Coordinated Amended Complaint by multiple insurers and an Amended Class Action Complaint on behalf of putative classes of individuals and third-party payors, including insurers, have been filed.  (Docket ## 30, 31.)  The filing occurred on February 1, 2005, over two months after the initial conference, over nine months after the filing of the complaint in Guardian (the first Neurontin marketing and sales case in this district), over five years after the unsealing of the complaint in United States of America ex rel. David Franklin v. Parke-Davis, Division of Warner-Lambert Co., Civil Action No. 96-11651-PBS, and well over five years after the alleged events and circumstances that were at issue in Franklin (which are, plaintiffs' claims to the contrary notwithstanding, the only events and circumstances at issue here).  Defendants have filed motions to dismiss both amended complaints.  (Docket ## 58, 59.)  Plaintiffs' oppositions, if any, are due on April 15, 2005.  (Docket # 47.)

In addition to establishing the mechanics for the consolidation of the numerous actions that had been and were to be transferred here, the first CMO appointed Plaintiffs' Liaison Counsel, established the membership of Plaintiffs' Steering Committee, and defined the roles and responsibilities of liaison counsel and the steering committee.  It also required initial discovery (which has been completed), established the procedure for the entry of a protective order (which has been entered), and required the preparation and presentation of further proposed CMOs (which have been entered).  (Docket # 15 at 7-9, 11.)

The second CMO was entered on February 24, 2005. It establishes the schedule pursuant to which "[t]he case shall be conducted . . .." (Chaffin Dec., Ex. 47.) The schedule is aggressive. It assumes and requires that the issues in "[t]he case" have been pleaded, if not finally framed, by now. The third CMO was entered on March 22, 2005. (Docket # 62.) It contains extensive provisions concerning filing and service, discovery, and settlement.

## The Assurant Plaintiffs' Insistence On Separate Treatment

On March 24, 2005, Defendants' co-counsel conferred with co-counsel for the plaintiffs in Assurant ("Assurant's counsel"). Defendants' co-counsel advised Assurant's counsel that (1) in Defendants' view, all claims in "[t]he case" are to proceed on a coordinated and consolidated basis solely via the amended complaints that were filed last month, (2) Defendants' counsel suspect that Assurant's counsel believe otherwise and would expect a response to the Complaint today, and (3) Defendants' lead counsel is on vacation. Assurant's counsel confirmed that the plaintiffs in Assurant believe that Defendants have or will have an obligation to respond separately to the Complaint (or possible amended complaint) in Assurant and that the plaintiffs in Assurant will seek to proceed separately on their own Complaint (or amended complaint). In view of the absence of Defendants' lead counsel, an attempt was made to reach agreement on an assented-to motion to enlarge Defendants' time to respond in order to allow further discussion regarding these matters, but it was unsuccessful. (Chaffin Dec., ¶ 11.)

## ARGUMENT

### ALL PROCEEDINGS IN ASSURANT SHOULD BE STAYED OR, IN THE ALTERNATIVE, DEFENDANTS' TIME TO RESPOND SHOULD BE ENLARGED SINE DIE

Defendants believe that the purpose and intent of the first CMO was to consolidate and coordinate all of the actions that had been and were to be transferred to the Court by requiring,

among other things, that "[t]he case" proceed on the basis of only the amended and consolidated or coordinated complaints that were filed on February 1, 2005. They have a good faith basis, therefore, for their belief in the corollaries-- that the first CMO rules out separate pursuit of and proceedings in tag-along actions, and that the onus is on any plaintiff that wants to pursue a tag-along action separately, including the plaintiffs in Assurant, to seek a modification of the first CMO.  Indeed, Defendants would be on firm footing were they simply to ignore the Complaint in Assurant.  Nevertheless, in an abundance of caution, and to ensure the preservation of the progress that has been made in coordinating and consolidating this case, Defendants move the Court to stay all proceedings in Assurant.

As only Judge Selya would (or could) put it, "it is apodictic that federal courts possess the inherent power to stay proceedings for prudential reasons."  Microfinancial, Inc. v. Premier Holidays International, Inc., 385 F.3d 72, 77 (1st Cir. 2004).  See also In re Columbia University Patent Litigation, 330 F. Supp. 2d 12, 15 (D. Mass. 2004) (recognizing court's inherent power to stay proceedings).  The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254 (1936).

An appropriate exercise of the power is to "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."  Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., 544 F.2d 1207, 1215 (3d Cir. 1976).  It is equally appropriate to exercise the power in circumstances such as those at bar.  For instance, in In re Managed Care Litigation, 2003 WL 22410373 at *1, n.3 (S.D. Fla.), after numerous tag-along cases had been transferred to the court, the court temporarily stayed all tag-along cases

"pending disposition of dispositive motions in the main track."  Staying tag-along actions is

recognized as a necessary and effective tool in the administration of multi-district litigation:

> The addition of tag-along actions following the initiation of core MDL
> proceedings poses an administrative problem inasmuch as the tag-along plaintiffs
> are thrown into ongoing proceedings and must attempt to catch up . . .. To
> ameliorate such problems, I have found it beneficial in other multidistrict
> litigation to stay proceedings related to tag-along actions until the core
> proceedings have been completed.  In all other respects, scheduling and pretrial
> orders entered in the captioned litigation apply to the tag-along actions as well as
> to the core proceedings.  Moreover, although proceedings are stayed in the tag-
> along actions, I permit counsel for the tag-along plaintiffs to participate in the
> core discovery and exercise my discretion in deciding whether to rule on motions
> filed in the tag-along actions prior to consolidation (e.g., motions to remand).

In re Ford Motor Co. Bronco II Products Liability Litigation, 1996 WL 148294 at *2 (E.D.La.);

see also In re Taxable Municipal Bond Securities Litigation, 1994 WL 589659 at *1-2 (E.D.La.)

(rulings on dispositive motions in tag-along actions deferred pending resolution of class

certification issues).

The stay Defendants request would promote the disposition of this case with "economy

of time and effort for [the Court], for counsel, and for [the] litigants."  Landis, 299 U.S. at 254.

After months of effort, the case is well organized and on track.  The pleadings have been re-cast,

a comprehensive schedule has been set, procedures have been adopted, and personnel have been

appointed.  The Assurant plaintiffs, however, would disrupt all of this.  If the Assurant plaintiffs

had their way, the result would be a separate, duplicative proceeding running in parallel to the

proceedings in which the Court and the parties are immersed.  The existence of the separate

proceedings would complicate matters for the Court, counsel, and the parties, and create a risk of

inconsistent approaches and results.  And to what end?  The Assurant plaintiffs' rights are (since

they apparently meet at least one class definition) or easily can be fully protected.  There is

simply no reason to accord them any special status.  In addition, permitting Assurant to proceed

8

on a separate track could lead to requests by other tag-along plaintiffs for similar treatment, which, if granted, would complicate matters even more.

The Assurant plaintiffs may suggest that they should be permitted to proceed separately because they have distinctive antitrust claims.  If made, the suggestion should be rejected.  The antitrust claims belong in New Jersey (if anywhere) with the other identical antitrust claims that are part of the Neurontin Antitrust Litigation.  Further, the New Jersey court has stayed the antitrust claims pending a decision by the court in the Neurontin Patent Litigation on the validity of the Neurontin patents.  To permit the antitrust claims in Assurant to proceed would undermine the New Jersey court, which is entitled to comity.  See generally Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 11-12 (1ˢᵗ Cir. 1990) ("'the general principle [in an overlap between two federal district courts] is to avoid duplicative litigation.'") (quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976)); see also VISX, Inc. v. Garabet, M.D., 2000 WL 1929328 (N.D. Cal. 2000) (applying federal comity doctrine in patent infringement action and noting that doctrine allows court to transfer, stay or dismiss action when "a complaint involving substantially similar parties and issues has already been filed in another federal court").   Finally, the rationale behind the New Jersey court's stay applies here as well: the Assurant plaintiffs' antitrust claims turn on whether Pfizer's litigation against the generic manufacturers was objectively baseless, which in turn implicates the validity of the patents on Neurontin.  Whether the patents are invalid is at issue in the Neurontin Patent Litigation.  The Neurontin Patent Litigation is, therefore, "another [lawsuit] which may substantially affect" "or be dispositive of" the Assurant plaintiffs' antitrust claims.  Bechtel Corp., 544 F.2d at 1215.  Accordingly, the Court should "hold [Assurant] in abeyance to abide the outcome of" the patent litigation.  Id.

For these reasons and under the authority cited above, all proceedings in <u>Assurant</u> should be stayed, at least until the Court has ruled on the pending motions to dismiss.  In the alternative, Defendants' time to respond to the Complaint in <u>Assurant</u> should be extended <u>sine die</u>.  Whether and when the Complaint warrants a separate response should be addressed after and based on the Court's decision on the motions to dismiss.  When that will be is, of course, unknown at this time.  Therefore, it would serve no purpose to set a specific date for the response.

<u>**Conclusion**</u>

For the foregoing reasons, Defendants respectfully request that the Court stay all proceedings in <u>Assurant</u> or, in the alternative, that it extend the time for Defendants to respond to the Complaint therein <u>sine die</u>.

Dated:  March 25, 2005

DAVIS POLK & WARDWELL

By:   /s/ James P. Rouhandeh
      James P. Rouhandeh

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

- and -

HARE & CHAFFIN

By:   /s/ David B. Chaffin
      David B. Chaffin

BBO #549245
160 Federal Street
Boston, Massachusetts 02110
(617) 330-5000

*Attorneys for Defendants Pfizer Inc. and Warner-Lambert Company*

11