UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| IN RE NEURONTIN MARKETING AND ) | MDL Docket No. 1629 |
| SALES PRACTICES LITIGATION ) | |
| _____ ) | Master File No. 04-10981 |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ALL ACTIONS ) | Judge Patti B. Saris |
| _____ ) | |

**MDL PLAINTIFFS' STATUS REPORT AND PROPOSED AGENDA**

Pursuant to the Court's May 2, 2005 Procedural Order, the undersigned counsel for

Plaintiffs hereby submit a status report to the Court listing the status of all pending motions to

date.  The status report is attached hereto as Exhibit A.  The attached status report reflects input

from Defendants' counsel.

In addition, the MDL Plaintiffs propose below an agenda for the Status Conference on

May 13, 2005.

Proposed Agenda:

1.  Brief Report of MDL Plaintiffs Concerning Status of Discovery to Date;

2.  Appointment of Discovery Magistrate;

3.  Case Management As it Relates to Transfer of Personal Injury Cases to MDL

1629; and

4.  Case Management As it Relates to Antitrust Allegations Alleged in *Assurant*

*Health, Inc. et al. v. Prizer*, Docket No. 05-10535.

In addition, in reference to item number 3 on the above agenda, MDL Plaintiffs submit

herewith a letter to the Court from attorney Andrew G. Finkelstein concerning the product

liability and personal injury cases recently transferred to MDL 1629.  Attorney Finkelstein's

letter is attached hereto as <u>Exhibit B</u>.  Mr. Finkelstein will be in attendance at the Status

Conference.

Also in reference to agenda item number 3, MDL Plaintiffs submit herewith a Proposed

Case Management Order No. 4 (Relating to Products Liability Litigation) ("Proposed CMO 4")

for the Court's consideration.  Proposed CMO No. 4 is attached hereto as <u>Exhibit C</u>.  Defendants

have been provided a copy of Proposed CMO No. 4, however the parties have not yet engaged in

any negotiation concerning its content.  MDL Plaintiffs supply this Proposed CMO 4 in order to

facilitate discussion of the relevant issues at the May 13, 2005 Status Conference.

Finally, in reference to agenda item number 4, MDL Plaintiffs note that they have today

filed, under separate cover, MDL Plaintiffs' Response To Defendants' Motion For Stay Or, In

The Alternative, For Enlargement Of Time, With Respect To Tag-Along Action Of Assurant

Health, Inc.

Dated:  May 12, 2005                              Respectfully Submitted,


By:      /s/ Thomas M. Sobol
          Thomas M. Sobol
          Hagens Berman LLP
          One Main Street, 4th Floor
          Cambridge, MA 02142
          (617) 482-8200
          (617) 482-3003 (fax)

          ***Plaintiffs' Liaison Counsel***

By:     /s/ Barry Himmelstein
         Barry Himmelstein, Esquire
         Lieff Cabraser Heimann & Bernstein
         Embarcadero Center West
         275 Battery Street, 30th Floor
         San Francisco, CA 94111-3339


By:     /s/ Don Barrett
         Don Barrett, Esquire
         Barrett Law Office
         404 Court Square North
         P.O. Box 987
         Lexington, MS 39095


By:     /s/ Daniel Becnel
         Daniel Becnel, Jr., Esquire
         Law Offices of Daniel Becnel, Jr.
         106 W. Seventh Street
         P.O. Drawer H
         Reserve, LA 70084


By:     /s/ James Dugan
         James Dugan, Esquire
         Dugan & Browne
         650 Poydras St., Suite 2150
         New Orleans, LA 70130


By:     /s/ Thomas Greene
         Thomas Greene Esquire
         Greene & Hoffman
         125 Summer Street
         Boston, MA 02110


***Members of the Class Plaintiffs'
Steering Committee***

By:      /s/ Richard Cohen
_____

Richard Cohen, Esquire
Lowey Dannenberg Bemporad
& Selinger, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY  10601


By:      /s/ Linda P. Nussbaum
_____

Linda P. Nussbaum, Esquire
Cohen Milstein Hausfeld & Toll
150 East 52nd Street
Thirteenth Floor
New York, NY 10022


***Members of the Non-Class
Plaintiffs' Steering Committee***

# EXHIBIT A

*In Re Neurontin Marketing, Sales Practices and Products Liability Litigation*

## MDL 1692  -MARKETING AND SALES LITIGATION  STATUS CHART

| MARKETING AND SALES CASES | MDL DOCKET NO. | ORIGINAL JURISDICTION | STATUS |
|---|---|---|---|
| **Master Consolidated Class Action (Marketing and Sales)** | Master File 04-10981-PBS | D. Mass. pursuant to JPML Order dated October 26, 2004 | • Defendants' Motion to Dismiss Amended Class Action Complaint <br><br> o March 17, 2005 - Motion to Dismiss Class Action Complaint [Docket No. 59] <br><br> o March 17, 2005 -  Memorandum in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint and the First Coordinated Amended Complaint [Docket No. 60] <br><br> o March 17, 2005 -  Declaration David B. Chaffin In Support of Motion to Dismiss the Amended Class Action Complaint and the First Coordinated Amended Complaint [Docket No. 61] <br><br> o April 29, 2005 -  Joint Memorandum of Law of the Class and Coordinated Plaintiffs in Opposition to Defendants' Motion to Dismiss [Docket No. 101] <br><br> o April 29, 2005 -  Appendix of Unpublished Authorities Filed in Support of Joint Memorandum of Law of the Class and Coordinated Plaintiffs in Opposition to Defendants' Motion to Dismiss  [Docket No. 102] <br><br> o May 16, 2005 - Reply (if any) to Opposition to Motion due <br><br> o May 30, 2005 - Sur Reply (if any) Due <br><br> o Hearing on Motions to Dismiss Scheduled June 15, 2005 |

| MARKETING AND SALES CASES | MDL DOCKET NO. | ORIGINAL JURISDICTION | STATUS |
|---|---|---|---|
| | | | • Motion to Set Aside Order Entered April 25, 2005 Denying Motion for Appointment of Tennessee Lead Counsel<br><br>  o May 4, 2005 - Motion to Set Aside Order Entered April 25, 2005 Denying Motion for Appointment of Tennessee Lead Counsel [Docket No. 104 ]<br><br>  o May 4, 2005 - Memorandum in Support of Motion to Set Aside Order Entered April 25, 2005 Denying Motion for Appointment of Tennessee Lead Counsel [Docket No. 105]<br><br>  o May 18, 2004 – Response to Motion to Set Aside Order Entered April 25, 2005 due (pursuant to L.R. 7.1 (b)(2)) |
| **Coordinated Private Actions (Marketing and Sales)** | Master File 04-10981-PBS | D. Mass, cases originally filed. | • Defendants' Motion to Dismiss First Coordinated Amended Complaint [Docket No. 58]<br><br>  o March 17, 2005 - Motion to Dismiss Class Action Complaint [Docket No. 59]<br><br>  o March 17, 2005 - Memorandum in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint and the First Coordinated Amended Complaint [Docket No. 60]<br><br>  o March 17, 2005 - Declaration David B. Chaffin In Support of Motion to Dismiss the Amended Class Action Complaint and the First Coordinated Amended Complaint [Docket No. 61]<br><br>  o April 29, 2005 - Joint Memorandum of Law of the Class and Coordinated Plaintiffs in Opposition to Defendants' Motion to Dismiss [Docket No. 101] |

| MARKETING AND SALES CASES | MDL DOCKET NO. | ORIGINAL JURISDICTION | STATUS |
|---|---|---|---|
| **Coordinated Private Actions (cont.)** | | | o April 29, 2005 - Appendix of Unpublished Authorities Filed in Support of Joint Memorandum of Law of the Class and Coordinated Plaintiffs in Opposition to Defendants' Motion to Dismiss  [Docket No. 102]<br><br>o May 16, 2005 - Reply (if any) to Opposition to Motion due<br><br>o May 30, 2005 - Sur Reply (if any) Due<br><br>o Hearing on Motion to Dismiss scheduled for June 15, 2005 |
| ***Assurant Health, Inc. et. al. v. Pfizer, Inc. et al.*** | Mass. Docket No. 05-10535 -PBS | D. New Jersey | • Conditionally Transferred on February 8, 2005 – JPML CTO-3<br><br>• Objection to transfer filed by Plaintiffs on February 22, 2005<br><br>• Plaintiffs withdrew objection on March 15, 2005<br><br>• Case Transferred March 15, 2005 -  JPML Order Lifting Stay of Conditional Transfer Order<br><br>• Consolidated with MDL by Court's Order of Consolidation dated 4/25/05<br><br>• March 28, 2005, Electronic Order: Defendants' Emergency Motion for Stay or In the Alternative, For Enlargement of Time [Doc # 63] Granted (as to enlargement of time) pending Status Conference on May 13, 2005<br><br>• May 12, 2003, MDL Plaintiffs' Response to Defendants' Motion for Stay or, In the Alternative, for Enlargement of Time, with Respect to Tag-Along Action of Assurant Health, Inc. |

## MDL 1692  -PRODUCT LIABILITY LITIGATION STATUS CHART

| PRODUCT LIABILITY CASES | MDL DOCKET NO. | ORIGINAL JURISDICTION | STATUS |
|---|---|---|---|
| *McMinn v. Pfizer, 04-2690* | Master File 04-10981-PBS | D. Colorado | • Conditionally Transferred on February 8, 2005 – JPML CTO-3<br><br>• Consolidated with MDL by Court's Order of Consolidation dated 4/25/05 |
| *Brodsky v. Pfizer, 04-7960*<br>*Huffman v. Pfizer, 04-7961*<br>*Paulsen v. Pfizer, 04-8464*<br>*Sumait v. Pfizer, 04-8719*<br>*Smith v. Pfizer, 04-8720* | Master File 04-10981-PBS | S.D.N.Y. | • Conditionally Transferred on February 8, 2005 – JPML CTO-3<br><br>• Objection to transfer filed by Plaintiffs prior to February 23, 2005<br><br>• Objection withdrawn by Plaintiffs on April 16, 2005<br><br>• Cases Transferred April 20, 2005 -  JPML Order Lifting Stay of Conditional Transfer Order and Vacating the May 26, 2005 Hearing Session |
| *Miller v. Pfizer, 05-2113* | Master File 04-10981-PBS | W.D. Tennessee | • Conditionally Transferred on March 9, 2005 – JPML CTO-4<br><br>• Consolidated with MDL by Court's Order of Consolidation dated 4/25/05 |
| *Davis v. Pfizer, 05-39* | Master File 04-10981-PBS | E.D. Arkansas | • Conditionally Transferred on March 16, 2005 – JPML CTO-5<br><br>• Consolidated with MDL by Court's Order of Consolidation dated 4/25/05 |
| *Owens v. Pfizer, 04-768* | Master File 04-10981-PBS | S.D. Alabama | • Conditionally Transferred on April 13, 2005 – JPML CTO-6<br><br>• Objection to transfer filed by Plaintiffs on April 28, 2005 |

| PRODUCT LIABILITY CASES | MDL DOCKET NO. | ORIGINAL JURISDICTION | STATUS |
|---|---|---|---|
| *Whitehouse v. Pfizer, 04-6257* | Master File 04-10981-PBS | New Jersey | • Conditionally Transferred on April 13, 2005 – JPML CTO-6<br><br>• Objection to transfer filed by Plaintiffs on April 28, 2005 |
| *Vercillo v. Pfizer, 05-32* | Master File 04-10981-PBS | N.D.N.Y | • Conditionally Transferred on April 13, 2005 – JPML CTO-6<br><br>• Objection to transfer filed by Plaintiffs on April 28, 2005 |
| *Lyman v. Pfizer, 04-6704*<br>*Minisquero v. Pfizer, 04-7297*<br>*Justine James v. Pfizer, 04-7374*<br>*DiGiacomo v. Pfizer, 04-7962*<br>*Aronson v. Pfizer, 04-8721*<br>*Dodson v. Pfizer, 04-8963*<br>*Scott v. Pfizer, 04-8990*<br>*Kern v. Pfizer, 04-9249*<br>*Dees v. Pfizer, 04-9304*<br>*Veraas v. Pfizer, 04-9429*<br>*Populis v. Pfizer, 04-10265*<br>*Wilson v. Pfizer, 05-72*<br>*Montgomery v. Pfizer, 05-73*<br>*Mendoza v. Pfizer, 05-74*<br>*Hargrove v. Pfizer, 05-75*<br>*Feyer v. Pfizer, 05-76*<br>*Retzer v. Pfizer, 05-77*<br>*Brown v. Pfizer, 05-237* | Master File 04-10981-PBS | S.D.N.Y | • Conditionally Transferred on April 13, 2005 – JPML CTO-6<br><br>• Objection to transfer filed by Plaintiffs on April 28, 2005 |
| *Cooper v. Pfizer, 04-255* | Master File 04-10981-PBS | N.D. Mississippi | • Transferred on April 19, 2005- JPML Transfer Order April 19, 2005 |
| *Anderson v. Pfizer, 04-275* | Master File 04-10981-PBS | N.D. Mississippi | • Transferred on April 19, 2005- JPML Transfer Order April 19, 2005 |

| PRODUCT LIABILITY CASES | MDL DOCKET NO. | ORIGINAL JURISDICTION | STATUS |
| --- | --- | --- | --- |
| *Barker v. Pfizer, 04-309* | Master File 04-10981-PBS | E.D. Texas | • Transferred on April 19, 2005- JPML Transfer Order April 19, 2005 |
| *DeRosa v. Pfizer, 05-116* | Master File 04-10981-PBS | D. New Hampshire | • Conditionally Transferred on May 6, 2005 – JPML CTO-7 |
| *Belbruno v. Pfizer, 05-1682* | | D. New Jersey | • Conditionally Transferred on May 6, 2005 – JPML CTO-7 |
| *Hansen v. Pfizer, 05-100* | | D. Vermont | • Conditionally Transferred on May 6, 2005 – JPML CTO-7 |

# EXHIBIT B



Howard S. Finkelstein, P.C.
Andrew G. Finkelstein, P.C. (NY & NJ)
George M. Levy
Kenneth L. Oliver, P.C.
Joel S. Finkelstein, P.C. (NY, NJ, MA & FL)
Duncan W. Clark
Ronald Rosenkranz
Robert J. Camera (NY & NJ)
Joseph P. Rones (NY & FL)
Steven Lim
George A. Kohl, 2nd (NY & MA)
Eleanor L. Polimeni
Steven H. Cohen
Francis Navarra

Andrew J. Genna (NY & PA)
Thomas C. Yatto
Elyssa M. Fried-DeRosa
Mary Ellen Wright
Kenneth B. Fromson (NY & NJ)
Joel Bossom
Nancy Y. Morgan (NY & PA)
Andrew L. Spitz
James W. Shuttleworth, III
Lawrence D. Lissauer
David E. Gross (NY & NJ)

Bonna L. Horovitz (NY, NJ & MA)
Terry D. Horner

Robert F. Moson
Debra J. Reisenman
Michael T. McGarry
Steven P. Shultz (NY & MA)
Julio E. Urrutia
Victoria Lieb Lightcap (NY & MA)
Ann R. Johnson (NY & CT)
Marshall P. Richer
Thomas J. Pronti
Kristine M. Cahill (NY & CT)
Kara L. Campbell (NY & CT)
Arieh Mezoff
Christopher T. Milkman

Silvia Fermanian
Karen M. Queenan (NY & CT)
Marie M. DuSault
Andrew I. Falk

Of Counsel
Jules P. Levine, P.C. (NY & FL)
Michael O. Gittelsohn, P.C. (NY)
Joel A. Reback (NY & Israel)
Sheila Rosenrauch (NY)
Kenneth Cohen (NJ)
Cynthia M. Maurer (NY & NJ)
Raye D. Futerfas (NJ)
Frances M. Bova (NY & NJ)
Kenneth G. Bartlett (CT & NJ)
Ari Kresch (NY & MI)

**Finkelstein & PARTNERS**
*Counselors At Law*

A Limited Liability Partnership

(800) 634-1212

REFER TO OUR FILE #        200599

May 9, 2005

Hon. Patti Saris
United States District Judge
United States Courthouse
1 Courthouse Way
Boston, MA 02210

Re:    MDL – 1629 – In re Neurontin Marketing, Sales Practices and Products Liability
Litigation

Dear Judge Saris:

In advance of the May 13, 2005 conference scheduled before your Honor, kindly accept
this as an outline of the procedural history to date of the product liability, personal injury
cases my office is handling and which have recently been transferred to the above
referenced MDL.

<u>Cases and Venue</u>

On April 20, 2005, five (5) cases handled by our office were transferred to the MDL (Ex.
1).   Additionally, twenty-one (21) cases have been conditionally transferred, and we
expect a formal Order from the Judicial Panel on Multidistrict Litigation shortly (Ex 2).

Additionally, my office currently has thirty two (32) pending cases in various state courts
throughout the country  (Ex 3).

<u>Existing Court Orders and Stipulations</u>

While cases are pending in various federal and state courts to date, two courts have issued
substantive Orders regarding the scope of discovery: (a) U.S. District Court Judge Jed
Rakoff, SDNY and (b) New York Supreme Court Justice Stewart Rosenwasser, Orange
County.

Regarding the scope of discoverable material, USDJ Rakoff ordered the production of the
defendants' entire adverse event database, medical communication and sales/marketing
databases.   The  discoverable  time  period  for  this  information  is  to  include  the  pre-

NEWBURGH • ALBANY • SYRACUSE • POUGHKEEPSIE • UTICA • TROY • BINGHAMTON • MIDDLETOWN • NYACK
NEWARK • NEW WINDSOR • GOSHEN • NEW HAVEN • CINCINNATI
Accredited CLE Provider        www.lawampm.com        www.stocklitigationlaw.com
send ALL correspondence to our operations center: 436 Robinson Avenue, Newburgh, NY 12550 • (800)634-1212 • Fax (845)562-3492

approval phase through the last alleged suicide or suicide attempt of a plaintiff, unless the Neurontin prescription "leading to the event took place significantly earlier." (Ex. 4 and 5). The last suicide committed by an individual whose case is currently in suit is July 20, 2004. We are currently preparing complaints related to suicides that occurred in January, 2005.

In the New York State court actions, Justice Rosenwasser ordered production of the entire medical communications, sales/marketing and visitors' speakers bureau databases nationwide (Ex 6). Additionally, Justice Rosenwasser ordered the production of a list of all employees involved in the research, development, selling and marketing of Neurontin employed by Pfizer or any predecessor company, together with all relevant Neurontin materials from their files (Ex 6).

In addition to these orders, the parties have met and conferred on numerous occasions; consequently the parties reached stipulations on several issues: preservation (Ex 7); confidentiality (Ex 8); the format and manner of exchanging discoverable materials (Ex 9).

Discovery Produced to Date

The parties have since worked on a collaborative basis to produce documents in electronic form, in excess of 500,000 pages consisting of the New Drug Application as well as *Franklin* litigation documents.

Existing Case Management Orders

On April 6, 2005, Justice Rosenwasser ordered from the bench that all depositions for which notices had previously been served and which pertained to areas of Regulatory Affairs, Safety Surveillance, Sales/Marketing, and Medical Communications, are to be completed by July 15, 2005.

On April 15, 2005, USDJ Rakoff modified his initial case management plan by Order (Ex 10) to be as follows:

(a)  plaintiffs' expert disclosures served by December 1, 2005;
(b)  requests to admit must be made by December 30, 2005;
(c)  defendants' expert disclosures served by January 2, 2006;
(d)  all depositions (including experts) must be completed by January 23, 2006;
(e)  all discovery will close on January 30, 2006;
(f)  moving papers on any post-discovery motions must be served by February 14, 2006, answering papers by February 28, 2006 and reply papers by March 7, 2006;
(g)  final pretrial conference, as well as oral argument on any such motions will be held on March 14, 2006.

Justice Rosenwasser, in his Order dated April 20, 2005, (Ex. 6),  set forth the following production schedule:

(a)     production of the ordered databases by June 6, 2005;
(b)     production of the list of employees by May 20, 2005;
(c)     production of the employees files by May 20, 2005.

My firm has been actively investigating and prosecuting this matter for nearly two years. I have been in close contact with many members of the existing Executive Committee for several months.  I look forward to working with the Court and the MDL attorneys in the hope that this matter can be brought to trial in a swift and amicable fashion.

Respectfully,

Andrew G. Finkelstein

cc     Davis Polk & Wardwell

EXHIBIT 1

200599

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:           [202] 502-2888

http://www.jpml.uscourts.gov

April 20, 2005

TO INVOLVED COUNSEL

Re: MDL-1629 -- In re Neurontin Marketing, Sales Practices and Products Liability Litigation

(See Attached Order)

Dear Counsel:

For your information, I am enclosing a copy of an order filed today by the Judicial Panel on
Multidistrict Litigation involving the above-captioned matter.

Very truly,

Michael J. Beck
Clerk of the Panel

By
Regina Hale
Calendar Clerk

Enclosure

JPML Form 34B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 2 0 2005

FILED
CLERK'S OFFICE

## DOCKET NO. 1629

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE NEURONTIN MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

*Stephen Brodsky v. Pfizer, Inc., et al.*, S.D. New York, C.A. No. 1:04-7960
*Dan Huffman, etc. v. Pfizer, Inc., et al.*, S.D. New York, C.A. No. 1:04-7961
*Patti Paulsen, etc. v. Pfizer, Inc., et al.*, S.D. New York, C.A. No. 1:04-8464
*Rosalia Sumait, et al. v. Pfizer, Inc., et al.*, S.D. New York, C.A. No. 1:04-8719
*Monica Smith, etc. v. Pfizer, Inc., et al.*, S.D. New York, C.A. No. 1:04-8720

## ORDER LIFTING STAY OF CONDITIONAL TRANSFER ORDER AND VACATING THE MAY 26, 2005 HEARING SESSION

A conditional transfer order was filed in these five actions on February 8, 2005. Prior to expiration of that order's fifteen-day stay of transmittal, plaintiffs in the actions filed a notice of opposition to the proposed transfer and the subsequent motion and brief to vacate the conditional transfer order. Plaintiffs have now advised the Panel that they withdraw their initial opposition to the conditional transfer order.

IT IS THEREFORE ORDERED that the stay of the Panel's conditional transfer order designated as "CTO-3" filed on February 8, 2005, is LIFTED insofar as it relates to these five actions, and thus the actions are transferred to the District of Massachusetts for inclusion in the coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407 being conducted by the Honorable Patti B. Saris.

IT IS FURTHER ORDERED that the Hearing Session Order and the attached Schedule filed on April 20, 2005, are VACATED insofar as they relate to these five actions.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# EXHIBIT 2

# UNITED STATES OF AMERICA
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C.  20002

Telephone:  [202] 502-2800
Fax:         [202] 502-2888

http://www.jpml.uscourts.gov

April 13, 2005

TO INVOLVED COUNSEL

Re:  MDL-1629 -- In re Neurontin Marketing and Sales Practices Litigation

(See Attached Schedule CTO-6)

Dear Counsel:

Attached is a copy of a conditional transfer order filed today by the Judicial Panel on Multidistrict Litigation involving the above matter.  The actions are transferred pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001).  Copies of Rule 5.2, dealing with service, and Rules 7.4 and 7.5, regarding "tag-along" actions, are attached.

Inasmuch as there is an unavoidable time lag between notification of the pendency of the tag-action action and the filing of a conditional transfer order, counsel are required by Rule 7.4(b) to notify this office **BY FACSIMILE**, at (202) 502-2888, of any official changes in the status of the tag-along action.  These changes could involve dismissal of the action, remand to state court, transfer to another federal court, etc., as indicated by an order filed by the district court.  Your cooperation would be appreciated.

**NOTICE OF OPPOSITION DUE ON OR BEFORE:  April 28, 2005**   (4 p.m. EST)
(Facsimile transmission is suggested.)

If you are considering opposing this conditional transfer order, please review Rules 7.4 and 7.5 of the Panel Rules before filing your Notice of Opposition.  Please file one Notice of Opposition (with an attached schedule of actions, if necessary) if you are opposing the transfer of more than one action.  A consolidated Motion and Brief to Vacate the CTO, with attached schedule of actions, is acceptable and encouraged.

A list of involved counsel is attached.

Very truly,

Michael J. Beck
Clerk of the Panel

By *Dana R. Stewart*
Deputy Clerk

Attachments

JPML Form 39A

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 1 3 2005

FILED
CLERK'S OFFICE

*DOCKET NO. 1629*

*BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

*IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION*

*(SEE ATTACHED SCHEDULE)*

*CONDITIONAL TRANSFER ORDER (CTO-6)*

On October 26, 2004, the Panel transferred 23 civil actions to the United States District Court for the District of Massachusetts for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, 22 additional actions have been transferred to the District of Massachusetts. With the consent of that court, all such actions have been assigned to the Honorable Patti B. Saris.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the District of Massachusetts and assigned to Judge Saris.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation,</u> 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the District of Massachusetts for the reasons stated in the order of October 26, 2004, 342 F.Supp.2d 1350 (J.P.M.L. 2004), and, with the consent of that court, assigned to the Honorable Patti B. Saris.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the District of Massachusetts. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

SCHEDULE CTO-6 ~ TAG ALONG ACTIONS
DOCKET NO. 1629
IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION

**DISTRICT DIV. C. A.#**

ALABAMA SOUTHERN
ALS    1    04-768                 Darlene Owens, etc. v. Pfizer, Inc., et al.

NEW JERSEY
NJ    2    04-6257                 James H. Whitehouse, Sr., et al. v. Pfizer, Inc., et al.

NEW YORK NORTHERN
NYN    5    05-32                  Frank Vercillo, Jr. v. Pfizer, Inc., et al.

NEW YORK SOUTHERN
NYS    1    04-6704               Gary L. Lyman, etc., et al. v. Pfizer, Inc., et al.
NYS    1    04-7297               Mark Minisquero, et al. v. Pfizer, Inc., et al.
NYS    1    04-7374               Nicole Justine James v. Pfizer, Inc., et al.
NYS    1    04-7962               Jay DiGiacomo v. Pfizer, Inc., et al.
NYS    1    04-8721               Avrill C. Aronson, etc. v. Pfizer, Inc., et al.
NYS    1    04-8963               Joy Dodson, et al. v. Pfizer, Inc., et al.
NYS    1    04-8990               Timothy P. Scott, etc. v. Pfizer, Inc., et al.
NYS    1    04-9249               Dorothy Kern v. Pfizer, Inc., et al.
NYS    1    04-9304               John Dees, et al. v. Pfizer, Inc., et al.
NYS    1    04-9429               Peter Veraas v. Pfizer, Inc., et al.
NYS    1    04-10265              Theodore Populis, et al. v. Pfizer, Inc., et al.
NYS    1    05-72                 Kathleen Wilson, etc. v. Pfizer, Inc., et al.
NYS    1    05-73                 William Montgomery v. Pfizer, Inc., et al.
NYS    1    05-74                 Michael Mendoza v. Pfizer, Inc., et al.
NYS    1    05-75                 Johnnie Hargrove v. Pfizer, Inc., et al.
NYS    1    05-76                 Shanan Feyer, etc. v. Pfizer, Inc., et al.
NYS    1    05-77                 Gregory Retzer v. Pfizer, Inc., et al.
NYS    1    05-237                Sidney Brown, etc. v. Pfizer, Inc., et al.

# INVOLVED COUNSEL LIST FOR SCHEDULE CTO-6
## DOCKET NO. 1629
### IN RE NEURONTIN MARKETING AND SALES PRACTICES LITIGATION

Andrew G. Finkelstein
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburg, NY 12550

Dennis E. Glazer
Davis, Polk & Wardwell
450 Lexington Avenue
30th Floor
New York, NY 10017

David E. Gross
Finkelstein & Partners, LLP
50 Park Place, 10th Floor
Newark, NY 07102

Andrew B. Johnson
Bradley Arant Rose & White, LLP
One Federal Place
1819 Fifth Avenue, North
Birmingham, AL 35203

Nancy Y. Morgan
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550-3341

Richard G. Placey
Montgomery, McCracken, Walker & Rhoads
Liberty View, 6th Floor
457 Haddonfield Road
Cherry Hill, NJ 08002

Eleanor Louise Polimeni
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550

James P. Rouhandeh
Davis, Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Frank Woodson
Beasley, Allen, Crow, Methvin, Portis & Miles, PC
P.O. Box 4160
Montgomery, AL 36103-4160

Mary Ellen Wright
Finkelstein & Partners, LLP
436 Robinson Avenue
Newburgh, NY 12550

Erik M. Zissu
Davis, Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

EXHIBIT 3

| Plaintiff | State Court venue | Plaintiff's Residence |
|---|---|---|
| Young, William T. | New York | New York |
| Crone, Nicolette | California | California |
| Price, Eva | New York | New York |
| Delaney, Joshua | New York | Tennessee |
| Immoos, Carl | New York | Nevada |
| Rolick, Sabra K. | New York | Pennsylvania |
| Ramunni, John A. | New York | New York |
| Myers, Joseph Nolan | New York | South Carolina |
| Sherman, Sheila | New York | Florida |
| Richardson, Lori | New York | California |
| Tate, Joseph | New York | Arizona |
| Kief, Richard A. | New York | Ohio |
| Jarosz, Maria | New Jersey | New Jersey |
| Burgin, Becki | New York | Arizona |
| Catassi, Audrey | New York | Colorado |
| Padgett, Norma | New York | Kentucky |
| Carrico, Edwin | New York | New Mexico |
| Wagasky, Dominga | New York | Hawaii |
| George, Dawn | New York | Maryland |
| Sutton, Christopher | New York | Kentucky |
| Smith, Ruth | Tennessee | Tennessee |
| Ledwell, Steven | New Jersey | New Jersey |
| Neilson, Leslie | New York | Wisconsin |
| Saunders, Damon | New York | Alabama |
| Trousdale. Katherine | New York | California |
| Kefauver, Mandy | New York | Tennessee |
| Willie-Toon, Dawn | New York | Kentucky |
| Casunuran, Geralyn | New York | California |
| Akins, Mary | New York | Tennessee |
| Ruff, Rory | New York | Colorado |
| Grubbs, Andrew | New York | Kentucky |
| Dovenbarger, Myra | New York | Ohio |

EXHIBIT 4

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2·22·05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------

In re NEURONTIN                              :        04 Civ. 6704 (JSR)
                                             :
                                             :
-----------------------------------------X          ORDER

JED S. RAKOFF, U.S.D.J.

        Plaintiffs allege that a series of suicides and attempted

suicides were caused by the defendants' marketing their drug

Neurontin for purposes for which it was not approved (so-called

"off-label" uses) and for which defendants had reason to know it

was not safe.  They now move to compel discovery of the

defendants' records of adverse events associated with the use of

Neurontin.  Specifically, plaintiffs seek, in addition to the

contents of the adverse event database that defendants maintain

for the product, discovery of references to adverse events in

defendants' "medical communication" and "sales/marketing"

databases.

        In response, defendants seek, _first_, to limit discovery to

"psychiatric adverse events related to suicide" such as

depression, and _second_, to confine discovery to the contents of

its adverse events database, excluding the contents of its

medical communication and sales/marketing databases.[1]  The Court

_____

        [1]Defendants do agree to produce from those databases "all
reference to suicide, suicide ideation, suicide gesture and other
related psychiatric events."  They also agree to produce their
sales and marketing efforts involving the particular physicians
who prescribed Neurontin to plaintiffs and other physicians who

rejects the first limitation.  In many situations, evidence of some other kinds of adverse events may shed light on the question of whether a drug causes the effects at issue in a specific case. See generally In Re: Ephedra Litigation, 04 MD 1598 (S.D.N.Y.), Transcript, 1/10/05.  Moreover, evidence that defendants were aware of a pattern of other effects would go to the reasonableness of defendants' behavior in marketing the drug for off-label purposes generally.

Likewise, the Court rejects the second proposed limitation. Plaintiffs reasonably need access to multiple databases in order to ascertain whether defendants were accurately maintaining their adverse event database, as well as to determine whether defendants marketed the drug for uses not approved by federal regulators.  In the latter respect, it should also be noted that plaintiffs, or some of them, have made a claim that defendants were engaged in deceptive practices in violation of New York General Business Law § 349, a particularly broad statute.  All communications have the potential to be relevant since plaintiffs need not prove that their doctors relied on a specific deceptive statement for these claims.  See Pelman v. McDonald's, 2005 U.S. App. LEXIS 1229 (2d Cir. 2005).  Defendants' sales and marketing efforts cannot be assessed by looking only at communications directly with plaintiffs' doctors and nearby physicians.

---

worked or practiced with them.

2

While the defendants also complain that compliance with plaintiffs' requests would be burdensome, their objection in this respect is largely conclusory, complaining that they will "need to review copious narrative adverse event reports" and that they will be "required under federal law to redact confidential information from these records." Defendants' Brief at 4. Such conclusory assertions of counsel are insufficient to outweigh the articulated need for this discovery, especially in a case touching on public health. Additionally, it is unclear that redaction will be required at this stage, given the general protective order already promulgated in this case. See Order, 2/2/05. Accordingly, plaintiffs' motion to compel discovery is granted in full.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated:      New York, New York
            February 20, 2005

3

EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
In re NEURONTIN                           :        04 Civ. 6704 (JSR)
                                          :
------------------------------------------X        ORDER

JED S. RAKOFF, U.S.D.J.:

   Plaintiffs allege that a series of suicides and attempted
suicides were caused by the defendants' marketing their drug
Neurontin for purposes for which it was not approved (so-called
"off-label" uses) and for which defendants had reason to know it
was not safe.  The Court previously ruled that the defendant drug
companies must produce records of adverse events associated with
the use of this drug.  See Order 2/20/05.  Before the Court now
is plaintiffs' motion to compel production of various databases
related to defendants' sales and marketing efforts and
communications with doctors.  Defendants, while conceding the
discoverability of parts of these databases, seek to limit
discovery to events occurring in 1997 and before.[1]  For the
reasons stated below, the defendants' proposed temporal boundary
is modified and plaintiffs' motion granted, subject to some
limitations.

_____

   [1]While defendants' brief is limited to this issue,
plaintiffs' brief argues other points that appear not to be
contested by defendants, in particular that discovery of this
marketing information should not be restricted geographically.
Because it is unclear whether an actual controversy exists in
this regard, this Order does not address any issues beyond the
proposed temporal limitation on discovery.

Much of plaintiffs' complaint[2] consists of generalized allegations that do not refer to specific dates or incidents. However, the complaint does allege specific incidents, all taking place by 1997, of improper marketing of Neurontin for off-label purposes. See Complaint ¶¶ 151-183. It appears that these specific allegations are largely derived from a criminal information to which defendants pleaded guilty on June 7, 2004. See Information, attached to Complaint as Exhibit A; Complaint ¶¶ 117-18. The information contains no allegations subsequent to 1996.

Defendants argue that, because the complaint contains no specific allegations of wrongdoing subsequent to 1997, it need only turn over marketing materials prior to that time. However, the complaint does contain explicit (if generalized) allegations of wrongdoing continuing until at least June 2001. See Complaint ¶ 183. Moreover, plaintiffs' legal theory -- that the suicides and suicide attempts were caused by Neurontin that was prescribed because of defendants' wrongful actions -- implicitly requires that defendants' alleged deceptions, or at least the effects thereof, have continued at least until the last point in time when doctors could have chosen a different course of action had

_____

[2]While this case now covers many plaintiffs, plaintiffs' counsel has filed a virtually identical complaint for each. For convenience, this decision refers to a single "complaint," and paragraph references are to the complaint and answer in Lyman v. Pfizer, the lead case.

2

they been properly informed.  This is particularly true because defendants have interposed a learned intermediary defense, see Answer at 19, and thereby have explicitly put at issue the effects of defendants' marketing efforts on the prescribing doctors' ability to adequately counsel their patients as to Neurontin's benefits and risks.

The fact that in some places the complaint includes more particularized allegations, mostly taken from the information, does not render the remainder of the complaint, which the defendants do not claim fails to satisfy the minimal standards of notice pleading,[3] insufficiently detailed to obtain discovery of evidence relevant to the claims and defenses pleaded, see Fed. R. Civ. P. 26(b)(1).  It does, perhaps, indicate that plaintiffs have a lesser chance of finding evidence bearing out those allegations, but this is not a consideration the Court may take into account in determining whether "the burden or expense of the proposed discovery outweighs its likely benefit," see Fed R. Civ. P. 26(b)(2) (court should consider "the needs of the case, the amount in controversy, the parties' resources, the importance of

---

[3]While defendants' brief implies that the lack of specificity indicates that plaintiffs lack a good-faith basis for their generalized allegations, see Defendants' Brief at 3 (stating that plaintiffs "allege only generally and without any factual support that off-label promotion occurred in the years following 1997"), defendants do not move to strike any portion of the complaint for this reason or for vagueness, and so the Court cannot ignore the less specific allegations for these purposes.

3

the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues"). The Court's power to impose limits on discovery of potentially relevant material is meant to prevent parties from using redundant requests to turn discovery into a "war of attrition." Fed. R. Civ. P. 26 advisory committee's note. It is not a license for the Court to "deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case" because it harbors doubts about that party's ability to find evidence that bears out its allegations. Id.

Accordingly, plaintiffs are permitted to discover evidence of defendants' marketing efforts as of the last day such marketing could be relevant to the claims and defenses pleaded -- i.e., the last Neurontin prescription issued to a plaintiff or plaintiff's decedent in this case. See Incollingo v. Ewing, 282 A.2d 206, 221-23 (Pa. 1971) (upholding introduction of evidence of drug manufacturer's national marketing efforts to show influence on prescribing doctor, but permitting evidence of marketing efforts after the prescription only to show feasibility of warning, not to show negligence).[4] Applying this rule to an

---

[4] Plaintiffs argue that conduct subsequent to the suicides and suicide attempts could be relevant because it furthers plaintiffs' request for punitive damages. Defendants argue that discovery strictly for purposes of punitive damages is limited to a defendant's net worth and finances. The Court need not resolve this issue yet, because for now it finds relatively limited potential use of this material, given the burden on defendants to

individual case is simple. For example, decedent in the lead case, Lyman v. Pfizer, committed suicide on July 23, 2002. Complaint ¶ 4. Because the pleadings provide no further details as to any dates on which Neurontin was prescribed, if Lyman were an individual case, the Court would cut off discovery of marketing efforts at July 23, 2002, the last date at which they could be relevant.

Complicating matters somewhat is the fact that this case now includes many plaintiffs with different incident dates. Because the cases have been consolidated for all purposes, it would be pointless as well as impractical to impose separate discovery cut-off dates. The Court therefore instructs the parties to determine the last date on which marketing efforts could be relevant to any of the cases in this action; that date will be the latest alleged suicide or suicide attempt, unless there is evidence that the prescription allegedly leading to that event

---

produce it. See Affidavit of Laura M. Kibbe, sworn to 4/21/05. While courts in this circuit usually order punitive-damages discovery to take place concurrently with liability discovery, this is not a hard-and-fast rule, and concurrent discovery can be denied where, as here, the hardship to defendant substantially outweighs the potential benefit to the plaintiff, at least as seen from this stage of the case. See Tu'Shan Hamm v. Potamkin, 1999 U.S. Dist. LEXIS 5948, at *5-*8 (S.D.N.Y. 1999). Should it appear as this case progresses that plaintiffs have a substantial chance to win punitive damages and that this information is important to such a claim, the Court can order separate discovery of material specific to punitive damages. See Davis v. Ross, 107 F.R.D. 326, 327 (S.D.N.Y. 1985).

took place significantly earlier.[5]  Such date will be the cut-off date for discovery of defendants' marketing efforts.  Should the parties fail to reach agreement on this date, they are instructed to jointly call chambers immediately for resolution.

    SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:     New York, New York
         April 25, 2005

---

[5] If plaintiffs' counsel files additional cases with later event dates that are consolidated into this action's discovery schedule, defendants are expected to update any disclosures already made to conform to such later discovery cut-off dates. Given this possibility, the parties are encouraged to set a cut-off date that accommodates any filings plaintiff expects to make in the near future.

# EXHIBIT 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
----------------------------------------------------------------X
WILLIAM T. YOUNG,

                              Plaintiff,

              -against-

PFIZER INC., and PARKE-DAVIS, a Division            Index No. 1062/2004
of Warner-Lambert Company and WARNER-
LAMBERT COMPANY
                                                    **DECISION AND ORDER**

                              Defendants.
----------------------------------------------------------------X
ROSENWASSER, STEWART A., A.J.S.C.

    At a conference held on April 6, 2004, the Court heard argument concerning outstanding discovery issues. While the parties have endeavored to cooperate for the purpose of streamlining the discovery process, the Court has been involved on an ongoing basis to resolve issues in order to keep what can only be described as a massive discovery undertaking on track. The Court has reviewed and considered the plaintiff's memorandum of law in support of the production of defendant's databases and defendant's response thereto.

    The remaining outstanding discovery issues are decided as follows:

        1. Production of defendant's databases designated "Medical Communications", "Sales/Marketing" and "Visitors' Speakers Bureau (VSB)" is ordered regarding any and all information contained in these databases as it relates to Neurontin without geographic limitation. Any objections as to relevance are reserved for trial. It is unclear whether the entirety of these databases are in electronic form, thereby facilitating the search for the information and documents relevant to Neurontin, the drug at the center of plaintiff's claim. Therefore, the defendant shall have forty-five (45) days to comply.

        2. Defendant shall provide a list of all employees involved in the resea development, selling and marketing of Neurontin, setting forth their job title and whe employed by defendant Pfizer or a predecessor company; and state whether the empl currently employed and, if not, when the employment ceased.

        3. As to each identified employee, provide any documents relevant t

plaintiff's discovery demands which were created or maintained by such employee.  Defendant shall identify the employee or custodial file from which the documents were obtained.

While the Court indicated said documents would be turned over on a "rolling basis" prior to each deposition, upon reflection, discovery would not be facilitated by such process.  Plaintiff will be better able to determine which employees it wishes to depose if the documents are all turned over initially.  This will avoid a needless duplication of depositions.  Therefore, the employee list and corresponding documents shall be turned over within thirty (30) days of the date of this decision.

The foregoing constitutes the decision and order of the Court.

Dated: Goshen, New York
       April 29, 2005

ENTER:

HON. STEWART A. ROSENWASSER
Acting Justice of the Supreme Court

FINKELSTEIN & PARTNERS, LLP
436 Robinson Avenue
Newburgh, NY 12330

DAVIS, POLK & WARDWELL
450 Lexington Avenue
New York, NY 10017

EXHIBIT 7

204805
Stipulation

# DAVIS POLK & WARDWELL

1300 I STREET, N.W.
WASHINGTON, D.C. 20005

1600 EL CAMINO REAL
MENLO PARK, CA 94025

99 GRESHAM STREET
LONDON EC2V 7NG

15, AVENUE MATIGNON
75008 PARIS

450 LEXINGTON AVENUE
NEW YORK, N.Y. 10017
212 450 4000
FAX 212 450 3800

WRITER'S DIRECT

212 450 4084

MESSETURM
60308 FRANKFURT AM MAIN

MARQUÉS DE LA ENSENADA, 2
28004 MADRID

1-6-1 ROPPONGI
MINATO-KU, TOKYO 106-6033

3A CHATER ROAD
HONG KONG

November 30, 2004

Re:     **In re: Neurontin, 04-CV-6704 (JSR)**

Kenneth B. Fromson, Esq.
Finkelstein & Partners
436 Robinson Avenue
Newburgh, NY 12550

Dear Ken:

The following will set forth the general agreement of the parties (the "Agreement") regarding the preservation of documents, both in hard copy and in electronic format, in the actions consolidated as <u>In re Neurontin</u> (04 CV 6704) and the actions listed in Attachment A to this letter (the "Actions").

1.      During the pendency of the Actions, the parties shall preserve and not destroy, all documents (as defined in paragraph 2 below) that contain information relevant that may be relevant to, or may lead to the discovery of information relevant to, the research, development and clinical trials of Neurontin; communications with and submissions to the Food and Drug Administration regarding Neurontin; adverse event reports regarding Neurontin; and documents from the files of those individuals charged with the responsibility for selling and marketing Neurontin. This agreement is not intended to limit in any way the parties' duty to preserve documents relevant to this litigation pursuant to their obligations under the applicable rules (*i.e.*, the Federal Rules of Civil Procedure and/or the New York Civil Practice Law and Rules),

2.      For the purposes of this Agreement, "documents" shall be defined to include any writing, drawing, film, videotape, chart, photograph, phonograph record, tape record, mechanical or electronic sound recording or transcript thereof, retrievable data (whether carded, taped, coded, electrostatically or electromagnetically recorded, or otherwise), or other data compilation from which information can be obtained, including (but not limited to) notices, memoranda, diaries, minutes, purchase records, purchase invoices, market data, correspondence, computer storage tapes, computer storage cards or disks, books,

Kenneth Fromson, Esq.                    2                    . November 30, 2004

journals, ledgers, statements, reports, invoices, bills, vouchers, worksheets, jottings, notes, letters, abstracts, audits, charts, checks, diagrams, drafts, recordings, instructions, lists, logs, orders, recitals, telegram messages, telephone bills and logs, résumés, summaries, compilations, computations, and other formal and informal writings or tangible preservations of information.

      3.      With respect to documents relating to the selling and marketing of Neurontin, this Agreement pertains only to such documents that have been created or generated prior to today, November 30, 1994. 2004. (KBF)

      4.      Nothing in this Agreement shall be construed to provide that the documents and materials subject to the Agreement are admissible or discoverable in this or any other litigation.

      5.      Notwithstanding any provision of this Agreement, the parties shall not be required to preserve or maintain any electronic media used for disaster recovery purposes other than those electronic media that are currently being preserved pursuant to the agreed order in the matter styled In re Prempro Products Liability Litigation, MDL Docket No. 4:03 CV 1507 (WRW) (E.D. Ark).

      6.      The parties will agree to meet and confer in good faith to resolve questions as to what documents are covered by this Agreement, what documents are outside the scope of this Agreement or otherwise need not be preserved and as to an earlier date for the lifting of this Agreement as to particular categories of documents. This Agreement may be modified, superseded, or terminated by consent of the parties or by court order.

      7.      Any party may apply to the court for clarification or relief, but only after meeting and conferring in good faith in an attempt to resolve any dispute, and upon reasonable notice. A party failing, within 60 days after receiving written notice from another party that specified documents will be destroyed, lost, or otherwise altered pursuant to routing policies and programs, to indicate in writing its objection, shall be deemed to have agreed to such action.

      8.      This agreement will remain in effect without regard to whether some or all of the Actions remain in federal court or are remanded to state court.

Kenneth Fromson, Esq.                    3                    November 30, 2004

If the foregoing is acceptable to you, please sign where indicated below.

Sincerely yours,

James E. Murray

Accepted and Agreed:

Attachment A

1.      Avrill C. Aronson, as Personal Representative of the Estate of Rhonda Hilda Cohen, Deceased v. Pfizer Inc., Parke-Davis, Warner-Lambert Company and Warner-Lambert Co. LLC (04-111907)

2.      Joy Dodson, an Infant by her Mother and Natural Guardian, Tammy Dodson, and Tammy Dodson, Individually v. Pfizer Inc., Parke-Davis, Warner-Lambert Co., and Warner-Lambert Co. LLC (114028/04)

3.      Patti Paulsen, as Administratix of the Estate of Frederic L. Paulson, deceased, v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. LLC, and Warner-Lambert Co. (04 CV 8464)

4.      Timothy P. Scott, as Administrator of the Estate of Ellem Marie Capune v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. and Warner-Lambert Co. LLC (04-7096)

5.      Monica Smith, as Administratix of the Estate of Kenneth Christopher Smith, Deceased, v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. LLC, and Warner-Lambert Co. (111431/04)

6.      Rosalie Sumait et al, Individually and as successors in interest to state of Manuel Sumait v. Pfizer Inc., Parke-Davis, Warner-Lambert Co., and Warner-Lambert Co. LLC (04 CV 8719)

7.      Young v. Pfizer Inc, Parke-Davis, and Warner-Lambert (04 CV 6609)

8.      Nicolette Crone et al. v. Pfizer Inc, Parke-Davis, Warner-Lambert Co., & Raymond Jennings, M.D., and Does 1-100 (CV-400432)

EXHIBIT 8

204805-6

Stipulation

## Confidentiality Agreement

The following will set forth the agreement of the parties (the "Agreement") governing the exchange of discovery and the treatment of confidential information in the actions consolidated as In re Neurontin (04 CV 6704) and the actions listed in Exhibit A to this Agreement (the "Actions").

1.     This Agreement shall govern the treatment of pleadings, correspondence, legal memoranda, documents (as defined by the applicable rules) and all other discovery materials which have been or will be filed, exchanged, served, produced or received by the parties during pre-trial proceedings in these Actions, as well as any and all copies, abstracts and summaries (the "Discovery Materials"). Any person, other than the producing party, who shall obtain access to Discovery Materials, shall use such Discovery Materials only in connection with the prosecution or defense of these Actions and for no other purpose whatsoever.

2.     All documents and information furnished by a party in conjunction with these Actions which contain or disclose trade secrets or other confidential research, development, or commercial information ("Confidential Information") may be designated "Confidential" by said party. The party receiving designated Confidential Information shall treat it as proprietary information and shall not use or disclose the information except for the purposes set forth in the Agreement or such orders as may be issued by the court during the course of this litigation. The provisions of this Agreement extend to all designated Confidential Information regardless of the manner in which it is disclosed, including but not limited to documents, interrogatory answers, responses to request for admissions, deposition transcripts, deposition exhibits, and any other discovery materials produced by a party in response to or in connection with any discovery conducted in this litigation, and any copies, notes, abstracts or summaries of the foregoing materials.

3.     The designation of information as "Confidential" shall constitute a representation that such document, material or information has been reviewed and that there is a good faith basis for such designation. If upon review any party reasonably and in good faith believes that any documents or information designated by a party are not "Confidential," then the party may challenge such designation under the procedures set forth by this Agreement.

4.     A party may designate documents or information as "Confidential" by explicitly identifying such documents or information and informing the other party in writing of such designation. The designation of material as "Confidential" may be made prior to reproduction of any such material selected on behalf of a requesting party for copying and before distribution of such

reproduced material to the requesting party.  A party shall not be deemed to have waived any right to designate materials as "Confidential" by allowing inspection of such material prior to a designation of such material as "Confidential" or by inadvertently failing to mark a document as "Confidential" prior to its disclosure.

      5.        Documents or information may also be designated as "Confidential" in the following ways:

      (a)       In the case of documents and the information contained therein, designation shall be made by means of the legend "Confidential" placed on each page of any such document.

      (b)       In the case of interrogatory answers, responses to request for admissions and the information contained therein, designation shall be made by means of a statement in the answers or responses specifying that the answers or responses or specific parts thereof are designated "Confidential."  The following legend shall be placed on the front of any set of interrogatory answers or responses to requests for admission containing Confidential Information: "Contains Confidential Information."

      (c)       In the case of depositions and the information contained in depositions (including exhibits), designation of the portions of the transcript (including exhibits) which contain Confidential Information shall be made by a statement to such effect on the record in the course of the deposition by counsel for the party or witness producing such information, or by letter from such counsel within thirty (30) days of receipt of the deposition transcript or copy thereof (or written notification that the transcript is available).  The entire deposition transcript (including exhibits) shall be treated as Confidential until the expiration of the above-referenced thirty-day period for designation by letter, except that the deponent may review the transcript of his or other own deposition during this thirty-day period.  The following legend shall be noted on any transcript and each copy of the transcript containing Confidential Information: "Contains Confidential Information."  If all or part of a videotaped deposition is designated as "Confidential," the videocassette or other videotape container shall be labeled with the legend provided for in paragraph 2 above.

      (d)       To the extent that matter stored or recorded in the form of electronic or magnetic media (including information, files, databases or programs stored on any digital or analog machine-readable device, computers, discs, networks or tapes) ("Computerized Material") is produced by any party in such form, the producing party may designate such matters as "Confidential" by cover letter referring generally to such matter.  Whenever any party to whom Computerized Material designated as "Confidential" is produced reduces such

material to hardcopy form, such party shall mark such hardcopy form with the legend provided for in paragraph 5(a) above.

(e)     To the extent that any party or counsel for any party creates, develops or otherwise establishes on any digital or analog machine-readable device, recording media, computers, discs, networks or tapes any information, files, databases or programs that contain information designated "Confidential," that party and/or its counsel must take all necessary steps to insure that access to that electronic or magnetic media is properly restricted to those person who, by the terms of this Agreement, may have access to Confidential Information.

(f)     All documents and materials filed with the court containing or reflecting the contents of Confidential Information shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the caption to the Litigation, a generic designation of the contents, the words Confidential Information Subject to Confidentiality Agreement and words in substantially the following form:

> This envelope contains documents which are filed under seal in this case by [name of party] and, by Order of this Court, dated ___, 200_, shall not be opened nor the contents displayed or revealed except as provided in that order or by further order of the Court.

Any pleading or other paper required to be filed under seal pursuant to this Paragraph shall also bear the legend "FILED UNDER SEAL" in the upper-right hand corner of the cover page of the document. Only those portions of such documents and materials containing or reflecting Confidential Information shall be considered Confidential and may be disclosed only in accordance with this Agreement. Where possible, only those portions of such filings which are Confidential Information shall be filed under seal. No party or other person may have access to any sealed document from the files of the court without an order of the court. The "Judge's Copy" of a sealed document may be opened by the presiding judge, his law clerks and other court personnel without further order of the court. Each document filed under seal may be returned to the party which filed it (1) if no appeal is taken, within ninety days after a final judgment is rendered, or (2) if an appeal is taken, within thirty days after the mandate of the last reviewing court which disposes of this litigation in its entirety is filed ("the final resolution of this litigation"). If the party which filed a sealed document fails to remove the document within the appropriate time frame, the document may be destroyed by the clerk of the court. Regardless of any provision in this Agreement to the contrary, a party does not have to file a document under seal if the Confidential Information contained or reflected in the document was so designated solely by that party.

6.      Materials and information subject to this Agreement shall be revealed only to the following persons ("qualified persons"):

(a).      the court and the court's staff including the clerk's office and any court reporter who transcribes the proceedings in this matter;

(b).      counsel of record for the parties and to their direct employees who are operating under the direct supervision of counsel;

(c).      any party, or to any officer, director, or employee of any party;

(d).      outside photocopying, data processing or graphic production services employed by the parties or their counsel to assist in the litigation;

(e).      independent experts, contractors or consultants working on behalf of a party for purposes of this litigation who have agreed in advance and in writing to abide by the terms of this Agreement and who have agreed to the jurisdiction of this court in the event of any violation of this Agreement;

(f).      any person who authored or received the document in question may be shown the document authored or received by the person, but may not be given or allowed to retain the document or a copy of the document and may not be allowed to make notes or otherwise preserve in writing the information contained therein;

(g).      any witness testifying in this case in trial or deposition or otherwise retained by a party as either a consultant or expert witness;

(h).      any person mutually agreed upon in writing between the parties; and

(i).      any attorney who represents a party and who has agreed in advance and in writing to abide by the terms of this Agreement and who has agreed to the jurisdiction of this court in the event of any violation of this Agreement

7.      In no event shall any disclosure of protected documents or confidential information be made to any competitor of Pfizer, or to any person who, upon reasonable and good faith inquiry, could be determined to be an employee of any competitor of Pfizer, irrespective of whether they are retained as an expert by plaintiffs in this action.

8(a).    Before being given access to any protected document or confidential information, each qualified person who falls within paragraphs 6(e), 6(f), 6(g), 6(h) or 6(i) shall be advised of the terms of this Agreement, shall be given a copy of this Agreement, and shall agree to be bound by the terms of this

Agreement, by executing an Agreement of Confidentiality in substantially the form attached hereto as Exhibit B. Counsel for each party shall maintain a list of all qualified persons to whom they or their client have provided any protected document or confidential information, and that list shall be available for inspection by the Court, *in camera.*

8(b).    Prior to giving access to any protected document or confidential information to any "attorney" who falls within paragraph 6(i), counsel for the party intending to provide such access must inform counsel for the producing party, in writing, of the name and firm of the attorney to whom access is intended to be given. Such notification must occur at least ten (10) days prior to the attorney receiving access to the protected document or confidential information. In the event a party objects to the provision of the protected document or confidential information to an attorney who falls within paragraph 6(i), the parties shall consult in a good faith attempt to resolve any dispute. If the parties are unable to reach an accord, the party seeking to provide access to an attorney under paragraph 6(i) may apply to the court for a ruling that the attorney shall be provided access.

9.    In the event a party objects to the designation under this Agreement by another party of any material, the objecting party shall consult with the designating party in good faith in an attempt to resolve any dispute. If the parties are unable to reach an accord as to the proper designation of the material, the objecting party may apply to the court for a ruling that the material shall not be so treated, giving notice to the party which has designated the material. If such a motion is made, the designating party would have the burden to establish that the designation is proper. If no such motion is made, the material will remain as designated. Any documents or other materials that have been designated Confidential shall be treated as Confidential until such time as the court rules that such material should not be treated as Confidential.

10.    The inadvertent or unintentional disclosure by the producing party of Confidential Information, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Upon learning of an inadvertent or unintentional disclosure of Confidential Information, the producing party shall within thirty (30) days designate such information as Confidential. The obligation to treat such information as Confidential shall run prospectively from the date of designation. Nothing contained within this paragraph prevents a party from challenging such a designation of documents or information pursuant to the procedures contained in paragraph 9.

11.     By producing in this litigation for initial inspection, and prior to copying for Plaintiffs' counsel, documents that contain the names of patients or physicians, Pfizer does not waive or violate any duty of Pfizer to protect the identity of physicians and patients.  It is further agreed that neither Plaintiffs' counsel, nor any employee of Plaintiffs' counsel, or consultant or expert employed by Plaintiffs' counsel, who participate in the initial document review, shall write down, record, or in any way document for later use in this litigation or otherwise, the name of any patient or physician contained in such documents, or any other identifying information.  Pfizer shall have the right to redact from copies of materials reproduced for use in this case at the request of Plaintiffs the name of any patient, or that patient's treating physician when provided in the context of the physician-patient relationship.

12.     A party's compliance with the terms of this Agreement shall not operate as an admission that any particular document is or is not (a) confidential, (b) privileged or (c) admissible in evidence at trial.

13.     Any party or person who has been furnished with documents designated Confidential Information pursuant to this Agreement who receives a subpoena (or other process) from any person (including natural persons, coronations, partnerships, firms, governmental agencies, departments or bodies, boards or associations) who is not a party to this Agreement, which subpoena seeks productions or disclosure of such Confidential Information, shall promptly and in any case by the close of the next business day, give telephonic notice and written notice by overnight delivery or facsimile to counsel for the party who produced or designated the materials as confidential, identifying the material sought and enclosing a copy of the subpoena or other process.  The party or person receiving the subpoena shall also inform the person seeking the Confidential Information that such Information is subject to the Agreement.  No production or other disclosure of such information pursuant to the subpoena or other process shall occur before (a) ten (10) days following the date on which notice is given or (b) the return date of the subpoena.  Notwithstanding this provision or any of the provisions herein, Defendants may disclose information contained in discovery materials that they receive in connection with this litigation consistent with their obligations to report adverse drug experiences pursuant to 21 C.F.R. 314.80.

14.     Unless otherwise directed by the court, a party may, subject to the rules of evidence and further orders from the court, use any Confidential Information for any purpose at trial or at any hearing before a judicial officer in this litigation.

15.     Nothing contained in this Agreement shall affect the right, if any, of any party or witness to make any other type of objection, claim, or other

response to discovery requests, including, without limitation, interrogatories, requests for admissions, requests for productions of documents or questions at a deposition. Nor shall this Agreement be construed as a waiver of any party's right to withhold or redact information protected from disclosure by the attorney-client privilege, physician-patient privilege, work product doctrine, or other applicable privilege, protection, law, or regulation, or to seek appropriate protective orders respecting documents asserted to be subject to such privilege.

16.     Nothing in this Agreement shall limit a party's right to disclose to any person, or use, for any purpose, its own information and documents.

17.     Within forty-five (45) days after the final resolution of the Actions, all Confidential Information, including all copies, abstracts and/or summaries, shall be returned to counsel for the party that produced it or, if the producing party's counsel so requests, destroyed. As to those materials that contain or reflect Confidential Information, but that constitute or reflect counsel's work product, counsel of record for the parties shall be entitled to retain such work product in their files, so long as it is clearly marked to reflect that it contains information subject to this Agreement. Counsel shall be entitled to retain pleadings, affidavits, motions, briefs, other papers filed with the Court, deposition transcripts, and the trial record (including exhibits) even if such materials contain Confidential Information, so long as such Confidential Information are clearly marked to reflect that they contain information subject to this Agreement

18.     This Agreement shall be binding upon the parties, their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors and other persons or organizations over whom or which the subject parties have control. The parties, their attorneys, and employees of such attorneys each expressly stipulates to the personal jurisdiction of the court in which this action proceeds for purposes of any proceeding brought by a party to this action to enforce this Agreement. The parties agree that this Agreement is and shall be deemed to be enforceable, and the parties agree that the terms of the Agreement may be enforced by specific performance in any court of competent jurisdiction.

19.     Upon final resolution of the Actions, this Agreement shall continue to be binding. The parties expressly agree to submit to the jurisdiction of the court for enforcement of the provisions of this Agreement following the final resolution of this litigation.

20.     This Agreement may be modified, superseded or terminated by consent of the parties or by court order.

21.     The parties agree to submit this Agreement as soon as practicable to the court that retains jurisdiction over the Actions and submit a joint motion that the court adopt and "so order" this Agreement as a binding order governing the litigation.

Agreed to on the 2 9nd day of November, 2004.

Finkelstein & PARTNERS
436 Robinson Avenue
Newburgh, NY 12550
(845) 562-0203
Counsel for Plaintiffs

Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Counsel for Defendants

Exhibit A

1.      Avrill C. Aronson, as Personal Representative of the Estate of Rhonda Hilda Cohen, Deceased v. Pfizer Inc., Parke-Davis, Warner-Lambert Company and Warner-Lambert Co. LLC (04-111907)

2.      Joy Dodson, an Infant by her Mother and Natural Guardian, Tammy Dodson, and Tammy Dodson, Individually v. Pfizer Inc., Parke-Davis, Warner-Lambert Co., and Warner-Lambert Co. LLC (114028/04)

3.      Patti Paulsen, as Administratix of the Estate of Frederic L. Paulson, deceased, v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. LLC, and Warner-Lambert Co. (04 CV 8464)

4.      Timothy P. Scott, as Administrator of the Estate of Ellem Marie Capune v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. and Warner-Lambert Co. LLC (04-7096)

5.      Monica Smith, as Administratix of the Estate of Kenneth Christopher Smith, Deceased, v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. LLC, and Warner-Lambert Co. (111431/04)

6.      Rosalie Sumait et al, Individually and as successors in interest to state of Manuel Sumait v. Pfizer Inc, Parke-Davis, Warner-Lambert Co., and Warner-Lambert Co. LLC (04 CV 8719)

7.      Young v. Pfizer Inc, Parke-Davis, and Warner-Lambert (04 CV 6609)

8.      Nicolette Crone et al. v. Pfizer Inc, Parke-Davis, Warner-Lambert Co., & Raymond Jennings, M.D., and Does 1-100 (CV-400432)

Exhibit B


## CERTIFICATION

1.     My name is _____.
I live at _____. I am employed by _____
_____. My position there is _____. My
business address is _____, and my telephone number is
_____.

2.     I have read and understand the Confidentiality Agreement, dated
_____, 2004.

3.     I understand that I may be receiving confidential information as
described in the Agreement.  I agree to be bound by all provisions of the
Agreement.  I agree not to disclose confidential information as described in the
Agreement to any person not entitled to receive it and agree not to use such
information except in connection with this action.

4.     I consent to an accept, generally and unconditionally, the
jurisdiction of the Court in these Actions for the enforcement of the provisions of
said Agreement.

5.     I declare under penalty of perjury under the laws of the United
States of America that the foregoing is true and correct.


Executed this _____ day of _____, 200_.


_____

EXHIBIT 9

204805
stipulation

The following will set forth the general agreement of the parties regarding the production of documents, both in hard copy and in electronic format, in the actions consolidated as In re Neurontin (04 CV 6704) and the actions listed in Attachment A to this agreement (the "Actions").

1.    Documents in hard copy:  With respect to documents that, as of the filing of the first of the Actions, had already been collected and copied, such documents, if discoverable, will be made available for inspection in hard copy.  The parties agree to meet and confer regarding whether such documents should be scanned into electronic format.  With respect to documents that are collected by either party in order to respond to a discovery request in these Actions, that party agrees to make available such documents for inspection in electronic format.  The documents will be provided on either disk or hard drive, with the receiving party responsible for the cost of the disk or hard drive.

2.    Documents in hard copy that have been previously scanned:  The parties agree that documents that have been previously scanned and that are in TIFF format will be produced in that format.

3.    Electronic Documents (other than databases):  The parties agree that documents in electronic format will be produced in Group IV TIFF format and ASCII Text.  The producing party will agree to consider in good faith a request to produce specific electronic documents in their native format where it is necessary for review of the electronic documents (e.g., documents in Microsoft Excel format).

4.    Databases:  The parties agree that databases or portions of databases that are discoverable shall be produced as databases, or in a format that may be loaded into a database.  Once a party identifies a database or portion of a database that is discoverable, that party agrees to inform the other party – before any conversion of the database is prepared – that such a database has been identified.  The parties agree to meet and confer regarding the appropriate format for the production of that database or portion thereof, and agree that the Microsoft Access or Oracle database formats are acceptable default formats.

5.    Notwithstanding any provision set forth above, any party may apply to the Court for relief, but only after first meeting and conferring in good faith with the other party to resolve any dispute, and after giving sufficient notice to be heard.

Agreed to on the 29th day of November, 2004.


Finkelstein & PARTNERS
436 Robinson Avenue
Newburgh, NY 12550
(845) 562-0203
Counsel for Plaintiffs

Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Counsel for Defendants

Attachment A

1.     Avrill C. Aronson, as Personal Representative of the Estate of Rhonda Hilda Cohen, Deceased v. Pfizer Inc., Parke-Davis, Warner-Lambert Company and Warner-Lambert Co. LLC (04-111907)

2.     Joy Dodson, an Infant by her Mother and Natural Guardian, Tammy Dodson, and Tammy Dodson, Individually v. Pfizer Inc., Parke-Davis, Warner-Lambert Co., and Warner-Lambert Co. LLC (114028/04)

3.     Patti Paulsen, as Administratix of the Estate of Frederic L. Paulson, deceased, v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. LLC, and Warner-Lambert Co. (04 CV 8464)

4.     Timothy P. Scott, as Administrator of the Estate of Ellem Marie Capune v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. and Warner-Lambert Co. LLC (04-7096)

5.     Monica Smith, as Administratix of the Estate of Kenneth Christopher Smith, Deceased, v. Pfizer Inc., Parke-Davis, Warner-Lambert Co. LLC, and Warner-Lambert Co. (111431/04)

6.     Rosalie Sumait et al, Individually and as successors in interest to state of Manuel Sumait v. Pfizer Inc, Parke-Davis, Warner-Lambert Co., and Warner-Lambert Co. LLC (04 CV 8719)

7.     Young v. Pfizer Inc, Parke-Davis, and Warner-Lambert (04 CV 6609)

8.     Nicolette Crone et al. v. Pfizer Inc, Parke-Davis, Warner-Lambert Co., & Raymond Jennings, M.D., and Does 1-100 (CV-400432)

EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
                                        :
In re NEURONTIN                         :        04 Civ. 6704 (JSR)
                                        :
                                        :
----------------------------------------X        ORDER

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED: 4-15-05              │
└─────────────────────────────────┘
```

JED S. RAKOFF, U.S.D.J.

        At the request of the parties and for the reasons stated
from the bench, see transcript, 4/14/05, the Court hereby
modifies the existing case management plan in these consolidated
cases, as follows:  (a) plaintiffs' expert disclosures must be
served by December 1, 2005; (b) requests to admit must be made by
December 30, 2005; (c) defendant's expert disclosures must be
served by January 2, 2006; (d) all depositions (including expert
depositions) must be completed by January 23, 2006; (e) all
discovery will close on January 30, 2006; (f) moving papers on
any post-discovery motions must be served by February 14, 2006,
answering papers by February 28, 2006, and reply papers by March
7, 2006; a final pretrial conference, as well as oral argument on
any such motions, will be held on March 14, 2006 at 10 a.m.  No
further requests for extension of discovery will be entertained.

        SO ORDERED.

                                    _____
                                    JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
          April 15, 2005

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

—————————————————————
                                              )
IN RE NEURONTIN MARKETING,                    )      MDL Docket No. 1629
SALES PRACTICES AND PRODUCTS                  )
LIABILITY LITIGATION                          )      Judge Patti B. Saris
—————————————————————)
                                              )
THIS DOCUMENT RELATES TO:                     )
                                              )      Civil Action No. 04-10981
ALL CLASS ACTIONS                             )
—————————————————————)


**[PROPOSED] CASE MANAGEMENT ORDER NO. 4**
**(RELATING TO PRODUCTS LIABILITY LITIGATION)**

WHEREAS, by Order dated April 20, 2005 the Judicial Panel on MultiDistrict Litigation

transferred to this Court five (5) product liability actions involving both allegations with respect

to the marketing and sales practices related to Neurontin as well as allegations related to the

safety of Neurontin and claims that Neurontin caused personal injury to plaintiffs; and

WHEREAS, by Order dated April 19, 2005, the Judicial Panel renamed MDL 1629 to *In*

*re Neurontin Marketing, Sales Practices and Products Liability Litigation*; and

WHEREAS, an additional twenty-six (26) actions involving claims of personal injury and

products liability have been conditionally transferred pursuant to the Judicial Panel's CTO

Nos. 4-7; and

WHEREAS, in order to promote judicial economy and avoid undue delay, the Court

finds that it would be appropriate to provide for case management of all transferred cases

alleging personal injury and product liability claims, separate and apart from that provided for

the originally transferred cases with claims related exclusively to marketing and sales and to

appoint a separate committee of counsel to act for and on behalf of plaintiffs with claims of personal injury; and

WHEREAS, in order to promote unnecessary duplication of effort on behalf of the parties and the Court, the Court finds that, to the extent possible, it would be appropriate to provide for coordination of all actions filed in or transferred to this District, whether they involve allegations of personal injury or allegations related to the sales and marketing of Neurontin.  Accordingly,

IT IS HEREBY ORDERED as follows:

## I.   PRETRIAL CONSOLIDATION AND COORDINATION

1.      By order of the Judicial Panel on Multidistrict Litigation ("MDL Panel"), the actions listed on Exhibit A have been transferred to this Court for coordinated pretrial proceedings.  Additional cases, identified on Exhibit B, have been identified as Tag-Along Actions and await transfer by the MDL Panel to this Court for coordinated pretrial proceedings.

2.      These cases, and any other cases involving claims of personal injury or products liability that are subsequently filed in, transferred to or removed to this proceeding are referred to as the "Products Liability Cases."

3.      This Order does not constitute a determination that actions consolidated for pretrial purposes should be consolidated for trial, nor does it have the effect of making any entity a party to any action in which he/she has not been named, served or added in accordance with the Federal Rules of Civil Procedure.  No party, by agreeing to this Order, waives any defense of lack of personal jurisdiction or insufficiency of service of process.

### A.      Applicability of Order

The terms of this Order shall apply automatically to all products liability cases transferred into MDL 1629 and to all other products liability cases that become a part of this proceeding by virtue of being filed in, removed to, or transferred to this Court (including cases transferred

pursuant to Local Rules 28 U.S.C. § 1404(a), or 28 U.S.C. § 1407). Case Management Orders Nos. 1-3 shall also apply to the Products Liability Cases to the extent the Court does not make alternative provisions related to the Products Liability Cases in this Order or in subsequent case management orders.

### B. Dissemination of Order

Within five (5) days of the date of this Order, Plaintiffs' Liaison Counsel (designated in Case Management Order 1) shall send a copy of this Order by overnight delivery, hand delivery or telecopy to all counsel in Products Liability Cases to which this Order applies. When an action that properly belongs as part of this proceeding and which alleges personal injury or products liability claims is hereinafter filed before this Court or transferred to the Court from another forum, Plaintiffs' Liaison Counsel shall immediately send a copy of this Order by overnight delivery, hand delivery, or telecopy to plaintiffs' counsel in that action. Objections to the terms of this Order must be filed by parties or their counsel within fifteen (15) days of receipt of the Order.

## II.   CASE IDENTIFICATION

This case shall be styled "*In re Neurontin Marketing, Sales Practices and Products Liability Litigation",* and all applicable provisions of all prior Case Management Orders are hereby amended accordingly.

## III.   ORGANIZATION OF PRODUCTS LIABILITY COUNSEL

### A.   Designation

Pending further order of this Court, the Court designates under Rule 23(g)(2)(a) the following firms to act on behalf of Products Liability Plaintiffs with responsibilities hereinafter described:

1.   As Products Liability Plaintiffs' Steering Committee:

Andrew G. Finkelstein
Finkelstein & Partners
436 Robinson Avenue
Newburgh, NY 12550

**B.      Products Liability Plaintiffs' Steering Committee Responsibilities**

1.      Plaintiffs' counsel appointed as members of the steering committee above shall be referred to collectively as the Products Liability Plaintiffs' Steering Committee of "PLPSC" or "PL Plaintiffs' Steering Committee."

2.      PL Plaintiffs' Steering Committee shall have sole authority over the following matters on behalf of the Products Liability Plaintiffs in their respective cases: (a) the establishment of working committees for the efficient prosecution of the Products Liability Cases and appointment of chair persons and members of such committees; (b) the initiation, response, scheduling, briefing and argument of all motions related to the Products Liability Cases; (c) the scope, order and conduct of all discovery proceedings in the Products Liability Cases; (d) such work assignments to other Plaintiffs' counsel in the Products Liability Cases as they may deem appropriate; (e) the retention of experts in the furtherance of the Products Liability Cases; (f) designation of which attorneys may appear at hearings, depositions and conferences with the Court related to the Products Liability Cases; (g) the timing and substance of any settlement negotiations with Defendants related to the Products Liability Cases; and (h) other matters concerning the prosecution and resolution of their respective cases.

3.      No motion shall be initiated or filed on behalf of any Products Liability Class Plaintiff except through Products Liability Plaintiffs' Steering Committee.

4.      Products Liability Plaintiffs' Steering Committee shall have sole authority to communicate with Defendants' counsel and the Court on behalf of all Products Liability

Plaintiffs, unless that authority is expressly delegated to other counsel. Defendants' counsel may rely upon all agreements made with Products Liability Plaintiffs' Steering Committee.

### C.      Further Orders

Upon application of Products Liability Plaintiffs' Steering Committee, or of by the Court *sua sponte*, further organizational order(s), including orders under Fed. R. Civ. 23(g)(2)(a), will be considered.

## IV.    COORDINATION OF PROCEEDINGS BETWEEN MARKETING AND SALES CASES AND PRODUCTS LIABILITY CASES

### A.      Allegations Unrelated to Personal Injury or Products Liability

All class claims other than those related to personal injury or products liability, whether or not asserted in the Products Liability Cases, shall be prosecuted on behalf of Plaintiffs by and at the direction of the Class Plaintiffs' Steering Committee established by this Court pursuant to Case Management Order No. 1.  All such claims, even if asserted in the Products Liability Cases, are subject to the Amended Class Action Complaint filed on February 1, 2005.

### B.      Coordination

Despite the separate steering committees appointed to represent the interests of Plaintiffs with personal injury or product liability claims and those with claims related to the marketing and sales practices of Neurontin, and despite the separate case schedule that may be established as between the two types of cases or claims, the Court expects Plaintiffs, through the respective steering committees, to the extent possible, to coordinate the prosecution of these matters so as to avoid undue waste of time, duplication of effort or undue expense on behalf of the Court and all parties involved.

## V.      FURTHER CASE SCHEDULE

Within fourteen (14) days of this Order, the Products Liability Plaintiff Steering Committee and Defendants shall confer and provide the Court with a Proposed Stipulated Case

Schedule to govern the remainder of the pre-trial activates related to the Products Liability Cases.  If the parties are unable to agree on such a schedule they shall provide the Court with a single statement identifying all areas of agreement and any areas on which agreement could not be reached.

## VI.   ATTORNEYS' TIME AND EXPENSE RECORDS

### A.   Maintenance of Contemporaneous Records

Any counsel who may seek an award (or approval) of a fee (or expenses) by the Court in connection with this proceeding shall keep a daily record of his/her time spent and expenses incurred regarding this proceeding, including a specific record of the hours, location, and particular activity.  The failure to maintain such records will be grounds for denying court-awarded attorneys' fees, as will insufficient description of the activity.

### B.   Filing

Each counsel (or each firm) who may seek an award (or approval) of a fee (or expenses) by the Court shall file quarterly with Product Liability Plaintiffs' Liaison Counsel a report summarizing according to each separate activity the time and reasonable and necessary expenses spent during the preceding quarter (and the ordinary billing rates of such attorneys in effect during such quarter) and the accumulated total of counsel's time, hourly rates, and expenses to date.


**SO ORDERED:**


_____

United States District Judge

Dated: _____