UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                      :
In re:   NEURONTIN MARKETING AND                                      :
         SALES PRACTICES LITIGATION                                   :
                                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   MDL Docket No. 1629
                                                                      :
THIS DOCUMENT RELATES TO:                                             :   Master File No. 04-10981
                                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   Judge Patti B. Saris
                                                                      :
HARDEN MANUFACTURING CORPORATION;                                     :
LOUISIANA HEALTH SERVICE INDEMNITY COMPANY,                           :
dba BLUECROSS/BLUESHIELD OF LOUISIANA; UNION                          :
OF OPERATING, LOCAL NO. 68 WELFARE FUND;                              :
ASEA/AFSCME LOCAL 52 HEALTH BENEFITS TRUST;                           :
GERALD SMITH; and LORRAINE KOPA, on behalf of                         :
themselves and all others similarly situated, v. PFIZER INC. and      :
WARNER-LAMBERT COMPANY.                                               :
                                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                      :
THE GUARDIAN LIFE INSURANCE COMPANY OF                                :
AMERICA v. PFIZER INC. and                                            :
                                                                      :
AETNA, INC. v. PFIZER INC.                                            :
                                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF DAVID B. CHAFFIN

I, David B. Chaffin, state, under the penalties of perjury, the following:

1.      I am a member of the bar of the Court.  I am co-counsel to Defendants Pfizer Inc.
and Warner-Lambert Company ("Defendants").

2.      I make this declaration in support of Defendants' reply memorandum in further
support of Defendants' motions to dismiss the Amended Class Action Complaint in Harden
Manufacturing Company, et al. v. Pfizer Inc., et uno and the First Coordinated Amended

Complaint in <u>The Guardian Life Insurance Company of America v. Pfizer Inc.</u> and <u>Aetna, Inc. v. Pfizer Inc.</u>

     3.     Attached as Exhibit 1 is a true and correct copy of <u>Medical Soc'y of N.J. v. Oxford Health Plans, Inc.</u>, A-1485-03T1 (N.J. Super. Ct. App. Div. Feb. 14, 2005).

SIGNED UNDER THE PENALTIES OF PERJURY
THIS 16TH DAY OF MAY 2005

_____
David B. Chaffin

EXHIBIT 1

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1485-03T1

MEDICAL SOCIETY OF NEW JERSEY,

       Plaintiff-Appellant,

v.

OXFORD HEALTH PLANS, INC. and
OXFORD HEALTH PLANS (NJ), INC.,

       Defendants-Respondents.

_____

Argued January 4, 2005 - Decided    FEB 1 4 2005

Before Judges Coburn, Wecker and S.L.
Reisner.

On appeal from the Superior Court of New
Jersey, Chancery Division, Mercer County,
C-64-02.

Edith M. Kallas (Milberg Weiss Bershad Hynes
& Lerach) of the New York Bar, admitted pro
hac vice, argued the cause for appellant
(Lite DePalma Greenberg & Rivas, and Ms.
Kallas, attorneys; Allyn Z. Lite and Ms.
Kallas, on the brief).

Marc De Leeuw (Sullivan & Cromwell) of the
New York Bar, admitted pro hac vice, argued
the cause for respondents (McCarter &
English, and Mr. De Leeuw, attorneys; Harvey
C. Kaish and Irene M. Hurtado, on the
brief).

PER CURIAM

The Medical Society of New Jersey appeals a trial court order dismissing its complaint against Oxford Health Plans, Inc. and Oxford Health Plans (NJ), Inc. (collectively designated as "Oxford").  We affirm.

I

The Medical Society, an association of 8,000 New Jersey physicians, filed suit against Oxford on its own behalf and on behalf of its members.  The suit alleged that Oxford, a health insurer, had contracted with many of the Society's members to provide health care services to patients covered under Oxford health insurance policies.  The Medical Society contended that Oxford had, through a variety of wrongful schemes, either denied, delayed or reduced payment to the contracting physicians for medical care which the doctors had properly provided to Oxford's insureds.

The Society contended that as a result of these wrongful practices, its physician members had been harmed and the Society had been frustrated in its organizational purpose of "striving to enhance the delivery of medical care of high quality" to New Jersey residents and had "been required to devote significant resources" in efforts to informally resolve its members' billing disputes with Oxford.  The Society also contended that by causing economic injury to the physicians, Oxford was in turn

2

harming the ability of their patients to obtain health care. The Society's complaint sought injunctive and declaratory relief against Oxford on a variety of theories, including violation of public policy, the Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-2, violation of the Health Care Information Networks and Technologies (HINT) Act, <u>N.J.S.A.</u> 17B:26-9.1(d), and tortious interference with prospective economic relations.

All of the contracts between Oxford and the physicians contained clauses requiring that any disputes arising under the contracts be resolved through binding arbitration:

> No civil action concerning any dispute arising under this Agreement shall be instituted before any court, and all such disputes shall be submitted to final and binding arbitration in New Jersey, pursuant to the rules of the American Arbitration Association with one arbitrator.

Based on this contractual language, Oxford moved to dismiss the complaint, contending that the Society lacked standing to maintain the suit because its members were obligated to arbitrate their grievances. Oxford also contended that none of the legal theories in the complaint stated a cause of action.

The trial court granted the motion, holding that the Medical Society lacked standing either as a representative of its members or in its own right and holding, in the alternative, that none of the Society's legal theories stated a claim upon

3

which relief could be granted.   The trial court also denied the
Medical Society's application to file an amended complaint to
assert additional legal theories.

II

In addressing Oxford's appeal, we first review our State's
liberal rules concerning standing.

> Without ever becoming enmeshed in the
> federal complexities and technicalities, we
> have appropriately confined litigation to
> those situations where the litigant's
> concern with the subject matter evidenced a
> sufficient stake and real adverseness.   In
> the overall we have given due weight to the
> interests of individual justice, along with
> the public interest, always bearing in mind
> that throughout our law we have been
> sweepingly rejecting procedural frustrations
> in favor of 'just and expeditious
> determinations on the ultimate merits.'
>
> [Crescent Pk. Tenants Ass'n v. Realty
> Equities Corp., 58 N.J. 98, 107-08 (1971)
> (citation omitted).]

We have recognized that, in appropriate circumstances, an
association has standing to file suit to address injuries to its
members or to its own interests:

> First, an association "may have standing in
> its own right to seek judicial relief from
> injury to itself and to vindicate whatever
> rights and immunities the association itself
> may enjoy."   Warth v. Seldin, supra, 422
> U.S. at 511, 95 S.Ct. at 2211, 45 L. Ed. 2d
> at 362.   Further, "in attempting to secure
> relief from injury to itself the association
> may assert the rights of its members, at
> least so long as the challenged infractions

4

adversely affect its members' associational ties." Ibid. Second, even in the absence of injury to itself, "an association may have standing solely as the representative of its members." Ibid. In such a situation, the association must allege that its members, or any one of them, "are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Ibid.

[In re Ass'n of Trial Lawyers of America, 228 N.J. Super. 180, 186 (App. Div.) certif. denied, 113 N.J. 660 (1988) (emphasis added).]

We agree with the trial judge that the arbitration clause precludes the Medical Society from maintaining this suit on behalf of its members. A suit by the members would not be justiciable in the Superior Court, because the members are contractually bound to submit their disputes with Oxford to binding arbitration. Ibid.

We also conclude that the Medical Society cannot pursue the complaint in its own right, because its asserted interests are no more than a restatement of its members' interests in obtaining payment under the contracts. The Society's reliance on Havens Realty Corp. v Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L. Ed. 2d 214 (1982), is misplaced. In Havens Realty, a fair housing organization, known as HOME, alleged that the defendant realtors' discriminatory policies were interfering with the

organization's ability to provide counseling and housing referrals to its members. It was this drain on its resources and frustration of its purpose that gave the organization standing:

> If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities--with the consequent drain on the organization's resources--constitutes far more than simply a setback to the organization's abstract social interests. We therefore conclude, as did the Courts of Appeals, that in view of HOME's allegations of injury it was improper for the District Court to dismiss for lack of standing the claims of the organization in its own right.
>
> [Id. at 379, 102 S. Ct. at 1124-25 (citation omitted).]

In this case, the injury that the Medical Society claims to have suffered stems from its efforts to informally resolve its members' billing disputes with Oxford. Those are the very disputes which the members are contractually obligated to arbitrate with Oxford. Consequently, the Medical Society's claimed injury is not really a separate injury to the Society; rather, it is inextricably intertwined with the claims of its members, claims that those members are obligated to arbitrate. Consequently, in this case we conclude that the Society's claim

6

of injury to its own interest is merely a pretext to circumvent the bar against its members suing Oxford in court.

In a very similar case, a Connecticut court dismissed a claim by the Connecticut State Medical Society seeking to assert claims against Oxford, because the member physicians' contracts with Oxford required arbitration. Connecticut State Med. Soc. v. Oxford Health Plans (CT), Inc., 33 Conn. L. Rptr. 384 (Conn. Super. Ct. Dec. 13, 2001), aff'd 272 Conn. 469 (Conn. 2005) (affirming on other grounds after the medical society did not appeal on the arbitration issue). We agree with the Connecticut trial court's rationale:

> It is illogical to assume that the representative or agent of a party that has agreed to arbitration may enforce that agreement but not itself be subject to the duty to arbitrate. An association whose members cannot, for such procedural reasons, bring suit, on their own behalf, has no standing to bring the same suit on its members' behalf. To hold otherwise would be to defeat the enforceability of arbitration agreements, as a party that had agreed to arbitrate could sidestep that obligation merely by having a surrogate, whether an association or an assignee, bring a suit on its behalf, depriving the other party to the contract of the benefit of the provisions of the contract.

[Id. at 6.]

Our courts have recognized the strong Federal and State policies favoring arbitration and have upheld arbitration

7

clauses even if they are included in contracts of adhesion.  See
Martindale v. Sandvik, Inc., 173 N.J. 76, 85-92 (2002).  In this
case, the arbitration clauses at issue also serve a specific
State policy of encouraging the use of arbitration to resolve
billing disputes between doctors and health insurers.  See
N.J.A.C. 11:22-1.8(a) and (b) (requiring health insurers to
provide alternate dispute resolution mechanisms to resolve
disputes with health care providers relating to payment of
claims).

We conclude that the Medical Society cannot litigate its
claims against Oxford, because its members are contractually
bound to arbitrate their disputes with Oxford.  In affirming the
dismissal of the complaint, we do not in any way underestimate
the potential significance of the underlying claims.  We imply
no view as to the merits of the claims.  But if plaintiff's
factual assertions are correct, Oxford is engaging in
unconscionable practices that could harm both doctors and
patients as well as undermine the implementation of managed care
in this State.  The physicians, however, are not without a forum
to resolve their claims.  All parties recognize that the doctors
can pursue those claims in arbitration, either individually or
through an arbitrated class action.  In fact, the parties have
advised us that there is a pending arbitration concerning the

8

very issues which are the subject of the complaint and that the
doctor who filed the arbitration request is also seeking to
convert it to a class action.[1]

We also conclude that the Medical Society lacks standing to
pursue its claims under the Consumer Fraud Act, N.J.S.A. 56:8-
19, under the well-established rule that a private party may not
pursue an action under the CFA solely for injunctive relief.
See, e.g., Weinberg v. Sprint Corp., 173 N.J. 233, 250 (2002).
While a consumer may seek injunctive relief in the context of a
suit to recover damages for an ascertainable loss, litigation
seeking exclusively injunctive relief under the CFA must be
pursued by the Attorney General. Id. at 253-54.

Since we have some doubt whether the arbitration clause at
issue in this case is sufficiently specific to require the
doctors to arbitrate their CFA claim, see Gras v. Assocs. First

---

[1] At oral argument, Oxford's counsel conceded that a class action
may be pursued through arbitration, although he contended that
these particular disputes do not lend themselves to class action
arbitration.    That issue must be decided in the arbitration
forum.   But we remind all parties that our decision here is
premised on our conclusion that remitting the doctors to
arbitration will be consistent with our judicial policy that
"throughout our law we have been sweepingly rejecting procedural
frustrations in favor of 'just and expeditious determinations on
the ultimate merits.'"    Crescent, supra, 58 N.J. at 107-08
(citations omitted).   We also express no view as to whether the
Medical Society would be deemed to have representational
standing in the arbitration forum.

9

Capital Corp., 346 N.J.Super. 42, 52 (App. Div. 2001), certif. denied, 171 N.J. 445 (2002); Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 580-81 (App. Div.), certif. denied, 181 N.J. 545 (2004), we also address the merits of that claim.  We agree with the trial judge that the Medical Society's complaint against Oxford does not state a claim under the CFA.  As more fully discussed in Judge Shuster's cogent opinion, neither the Medical Society nor its members are "consumers" of any product or service provided by Oxford.  See City Check Cashing v. Nat'l State Bank, 244 N.J. Super. 304, 309 (App. Div.), certif. denied, 122 N.J. 389 (1990); In re Managed Care Litig., 298 F. Supp. 2d 1259, 1303-04 (S.D. Fla. 2003).  Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 265 (1987), is not on point, as this case does not involve the sale of insurance to consumers.

In light of our conclusion that the Medical Society lacks standing to pursue this litigation, we need not address the merits of the additional legal and equitable theories asserted in the complaint.  All of those claims are premised on the same set of facts and, reduced to their essence, amount to a contention that Oxford is either delaying payment or is outright refusing to make payment to the doctors for services properly

10

rendered under their contracts.   Those claims must be pursued in arbitration.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

*[signature]*

CLERK OF THE APPELLATE DIVISION

11