UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :   MDL Docket No. 1629
In re:   NEURONTIN MARKETING AND                                  :
         SALES PRACTICES LITIGATION                               :   Master File No. 04-10981
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :   Judge Patti B. Saris
                                                                  :
THIS DOCUMENT RELATES TO:                                         :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
ASSURANT HEALTH, INC., et al. v. PFIZER INC., et al.              :
No. 1:05-cv-10535-PBS                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

## DEFENDANTS' RESPONSE TO ASSURANT PLAINTIFFS' REQUEST THAT COURT ISSUE A SUGGESTION OF REMAND

Defendants Pfizer Inc. and Warner-Lambert Company ("Defendants") submit this response to the *Assurant* Plaintiffs' Status Report and Request that this Court Issue a Suggestion of Remand to the Judicial Panel on Multidistrict Litigation dated May 22, 2005 ("Assurant Status Report" or "Assur. St. Rep.").

The *Assurant* Status Report addresses the issue of how the antitrust claims in the *Assurant* complaint should be treated in the event the Court denies the *Assurant* Plaintiffs' motion to remand. The *Assurant* Plaintiffs ask this Court to recommend to the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") that this case be transferred in its entirety to the original transferor court – the United States District Court for the District of New Jersey. In other words, Plaintiffs claim that despite the existence of two federal MDL proceedings relating to Neurontin – one relating to sales and marketing practices and the other relating to antitrust issues – their case belongs in neither.

This request should be denied for four reasons. First, the JPML has already decided that the *Assurant* action belongs in this Court because it involves questions of fact which are common

to the actions before this Court.  Second, the *Assurant* Plaintiffs waived any objection to their case being litigated in this Court when they withdrew their objection to the JPML's Conditional Transfer Order.  Third, Assurant's request that an additional federal district court judge other than the presiding judges in the two federal MDL proceedings should hear this case conflicts with the underlying premise behind MDL proceedings; namely, that cases involving common questions of fact should be litigated together to reduce the burdens on the parties and the federal judicial system.  Fourth, the alleged differences between the *Assurant* case and the actions consolidated in the two MDLs are not substantial and do not justify burdening a third district court with this action.

As set forth more fully below, Defendants request that the Court either (i) retain the *Assurant* case in its entirety and stay all antitrust claims until such time as Judge Lifland lifts the stay of the antitrust claims in the proceeding captioned *In re Neurontin Antitrust Litigation*, MDL Docket No. 1479 (the "Neurontin Antitrust MDL"); or (ii) sever the antitrust claims and transfer those claims to the Neurontin Antitrust MDL.

## BACKGROUND

The *Assurant* complaint contains two types of claims, antitrust and consumer protection, divided into 45 separate counts.  Counts 1 through 24 bring antitrust claims relating to the alleged unlawful restraint of trade or unlawful monopolization in violation of various statutes. Counts 25 though 43 bring claims of unfair and deceptive trade practices under the statutes of 15 different states.  Count 44 brings a claim for tortious interference with business relationship, and Count 45 brings a claim for unjust enrichment.

As discussed in Defendants' Memorandum in Support of Emergency Motion for Stay or, in the Alternative, for Enlargement of Time, ("Defendants' Stay Motion" or "Def. St. Mot."),

filed on March 25, 2005, Judge Lifland in the District of New Jersey has stayed the proceedings in the Neurontin Antitrust MDL until the resolution of motions for summary judgment in *In re Gabapentin Patent Litigation*, MDL Docket No. 1384 (the "Neurontin Patent Litigation"). Def. St. Mot., Ex. , Docket Entry  The stay is still in effect. (Docket # 64 at 2.)

On February 8, 2005, the JPML issued a Conditional Transfer Order ("CTO") relating to *Assurant* and six other cases. The CTO provides that *Assurant* "involve[s] questions of fact which are common to the actions previously transferred to the District of Massachusetts and assigned to Judge Saris . . .," and that the CTO would become final unless an objection to it were filed within 15 days after February 8, 2005. (Docket # 64 at 3.) Plaintiffs initially objected to the CTO, but subsequently withdrew their objection to transfer. (Id.) As a result, on March 15, 2005, the JPML issued an Order Lifting Stay of Conditional Transfer Order and transferred the *Assurant* action to this MDL.

After the transfer of *Assurant* to the MDL, the *Assurant* Plaintiffs sought a response to their complaint from Defendants, which led to the filing of Defendants' Stay Motion seeking an enlargement <u>sine die</u> of the time within which all Defendants must answer, move, or otherwise respond. On March 30, 2005, the Court issued an order that "allow[ed] the motion for enlargement of time." That Order remains in effect.

## ARGUMENT

### A.  *Assurant* was Properly Transferred to this Court  and its Claims are not Unique

The Panel's responsibility is to promote "the convenience of parties and witnesses and … promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. To accomplish this aim, the JPML can create a multidistrict litigation consisting of cases "involving one or more common questions of fact." *Id*. The Panel has held that 28 U.S.C. 1407's "remedial aim is to

3

eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate [sic] district and appellate courts in multidistrict related civil actions. *In re Plumbing Fixture Cases,* 298 F.Supp. at 491-92.  As discussed below, Assurant's consumer protection claims involve common questions of fact with the cases currently pending in this MDL.  Were Assurant's approach adopted, there would be great potential for "conflicting contemporaneous pretrial rulings," as this Court could rule one way and the other court could rule another way.  Having *Assurant's* claims relating to Neurontin sales and marketing practices proceed here furthers the statutory purposes of the Panel.

Plaintiffs argue that they assert a "unique theory of the case," Assur. St. Rep.at 5, and that as a result their complaint "is best left alone." *Id.* at 4.  The differences between the *Assurant* complaint and the complaints in this MDL, however, do not require different treatment, much less remand to the transferor court.  As an initial matter, the *Assurant* complaint does not make unique allegations of fact.  Instead, its allegations relating to Defendants' marketing practices are the same as those included in the Amended Class Action Complaint and the First Coordinated Amended Complaint. *See, e.g.,* Assur. Compl. ¶¶ 35-41 (alleging, *inter alia*, that Defendants engaged in a "false, deceptive, and misleading marketing program designed to convince the public … that Neurontin was safe and effective for certain uses that were, in fact, not safe and effective," and "Defendant Pfizer paid … third parties money in exchange for the false, deceptive, and misleading promotion of Neurontin.").

Moreover, the fact that Plaintiffs do not bring a RICO claim, *see* Assur. St. Rep. at 5, is irrelevant to whether *Assurant's* consumer protection claims contain common questions of fact with the MDL proceedings.  The First Coordinated Amended Complaint in the MDL brings claims under the consumer protection statutes of all 50 states, the District of Columbia, and

4

Puerto Rico; these claims certainly subsume the claims *Assurant* brings under the consumer protection statutes of 15 states.  The discovery related to these claims, if they are not dismissed, will be the same, the questions of liability under these statutes will be the same, and the pre-trial motion practice surrounding these statutes and the alleged conduct will be the same.

Assurant's inclusion of three additional defendants also does not overcome the arguments in favor of the action remaining in this Court.  Multidistrict litigations regularly include cases that include different defendants.  *See In re Janus Mutual Funds Investment Litigation*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2003) (establishing MDL consisting of cases in which different plaintiffs brought causes of action against different mutual fund families, and noting the MDL was appropriate because, *inter alia*, there were "some common defendants and/or witnesses").

Even if the actions in the Neurontin Antitrust Litigation do not involve antitrust claims based on Defendants' marketing policies as the *Assurant* Plaintiffs claim, *see* Assur. St. Rep.at 5, this does not explain why *Assurant's* consumer protection claims should be transferred to yet another federal judge.  Nor does it militate against transferring the *Assurant* antitrust claims to the Neurontin Antitrust MDL.  In addition to antitrust claims based on allegations regarding marketing practices, *Assurant* brings allegations that Defendants filed "objectively baseless" patent litigation against the manufacturers of generic gabapentin and makes various other claims about Defendants' behavior towards generics and patents.  *See, e.g.,* Assur. Compl. ¶ 45-56. These antitrust claims are hardly unique, and in fact are identical to the claims made in the Neurontin Antitrust MDL.  To the extent that the *Assurant* antitrust claims involve different theories of liability, Judge Lifland in the Neurontin Antitrust MDL is best situated to address those issues.

Finally, the proper time to make the arguments the *Assurant* Plaintiffs raise in their Status Report was in opposition to the Conditional Transfer ordered by the JPML. Assurant failed to make such arguments and chose instead to withdraw its opposition to transfer. After consenting to transfer, the *Assurant* Plaintiffs now seek remand of their case to the transferor court. The Court should decline to address these issues at this point in time.

**B.      The Court Should Retain *Assurant* and
        Stay the Antitrust Claims**

The Court should decline to issue a suggestion of remand to the JPML, and instead should stay the antitrust claims in their entirety, allowing Assurant to proceed at this time solely with their consumer protection claims.

A stay of the antitrust claims in *Assurant* would promote the disposition of this case with "economy of time and effort for [the Court], for counsel, and for [the] litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *In re Managed Care Litigation*, 2003 WL 22410373 at *1, n.3 (S.D. Fla.) (temporarily staying all tag-along cases "pending disposition of dispositive motions in the main track."); *see also* Def. St. Mot. at 7-9.

Assurant argues that its antitrust claims should go forward because one of its antitrust theories – leveraging relating to Defendants' alleged marketing practices – is not involved in the Neurontin Antitrust MDL. Its claims relating to alleged patent issues, however, are identical to those brought in the Neurontin Antitrust MDL, as discussed above. Those claims have been stayed by Judge Lifland because the court recognized that the antitrust claims will turn on, and therefore should await, the determination as to the validity of the patents. *See* Def. St. Mot. at 2-3. The antitrust claims relating to marketing should be stayed for similar reasons. As in the case of the sham patent litigation allegations, certain of Assurant's antitrust claims will rely in large part on whether it is determined that Defendants engaged in the "misrepresentation of

6

Neurontin's safety and effectiveness," Assur. Compl. ¶ 43, and "implemented a false, deceptive, and misleading marketing program designed to convince the public, including Plaintiffs, that Neurontin was safe and effective for certain uses that were, in fact, not safe and effective." *Id.* at ¶ 35. Assurant's theory relating to antitrust claims based on "leveraging," *see* Assur. St. Rep.at 5, thus requires as a necessary first step resolution of motions relating to claims based on Defendant's alleged off-label promotion. Accordingly, staying the antitrust claims that are based on marketing allegations is appropriate until the latter of the date the Court resolves the motions to dismiss or Judge Lifland lifts the stay in the Neurontin Antitrust MDL. *See Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.,* 544 F.2d 1207, 1215 (3d Cir. 1976) (an appropriate exercise of a court's power is to "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues.").

**C.     In the Alternative, the Court Should Sever and Transfer Antitrust Claims**

In the alternative, the Court should sever *Assurant's* antitrust claims under Rule 21 of the Federal Rules of Civil Procedure and transfer them to the District of New Jersey for inclusion in the Neurontin Antitrust MDL pursuant to 28 U.S.C. § 1404(a). *See Cain v. New York State Board of Elections,* 630 F.Supp. 221, 225-26 (E.D.N.Y. 1986) ("A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer."); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 333 F.Supp. 299, 303 (S.D.N.Y. 1971) (holding that "a transferee district court has the *authority* to transfer under section 1404(a), cases transferred to it under section 1407) (emphasis in original). Such a transfer is appropriate here in the interests of justice. *See* 28 U.S.C. 1404(a). A factor entitled to great weight in determining whether to transfer a case is whether other actions involving the same subject matter are pending in the transferee district. *Sea Hunt Corp. v. O.S. Debraak, Ltd.,*

No. 86-2758-MA, 1986 WL 15476, *2 (D. Mass. Dec. 23, 1986) (holding that the interests of justice dictated a case should be transferred to another district with a pending case involving the same issues and evidence to avoid duplicative litigation).

Severance and transfer of the antitrust claims is appropriate here and is, contrary to the *Assurant* Plaintiffs' argument, well within the Court's power.  Assurant is incorrect that Defendants seek to separate <u>issues</u> within its Complaint.  Instead, Defendants seek to have severed and transferred particular <u>claims</u>.  The cases cited by Assurant are inapposite, as they address attempts to sever the issue of class certification from the issue of liability.  *See In re Plumbing Fixture Cases,* 298 F. Supp. 484, 489-490 (J.P.M.L. 1968) (refusing to have issues of class certification decided by transferor court while issues of liability were decided by transferee court); *In re A.H. Robins Co., Inc.,* 610 F.Supp. 1099 (J.P.M.L. 1995) (same).  Here, unlike in the cited cases, Defendants believe that Counts 1-24 and Count 44 – all claims that seek redress for alleged violations of antitrust related laws – should be treated separately from Counts 25 through 43 (relating to consumer protection claims) and 45 (unjust enrichment).  While it may be true that one issue implicated by *Assurant's* antitrust claims is whether Defendants engaged in illegal promotion, it is also true that the consumer protection claims are separate claims in and of themselves, as evidenced by the complaint itself.

The Neurontin Antitrust MDL is the most appropriate venue for the treatment of the antitrust claims, as identical claims relating to patents are already consolidated and pending in that court.  Accordingly, if the Court does not wish to retain and stay the *Assurant* antitrust claims, the Court should sever the antitrust claims found in Counts 1 – 24 and 44 and transfer them to the District of New Jersey for inclusion in the Neurontin Antitrust MDL.

**D.      Assurant is not Prejudiced by Remaining in the MDL**

The *Assurant* Plaintiffs will not be prejudiced by remaining in this MDL.  Discovery is

just beginning in this matter.  *Cf. In re Deering Milliken Patent Litigation*, 476 F.Supp. 461

(J.P.M.L. 1979) (refusing to transfer an action to an MDL that was 10 years old and very far

advanced with all pretrial proceedings as well as a trial completed).  The *Assurant* Plaintiffs will

therefore not be prejudiced by a need to "catch-up" on discovery.  *See In re IBM Peripheral EDP*

*Devices Antitrust Litigation*, 407 F. Supp. 254 (J.P.M.L. 1976) (accepting transferee court's

suggestion of remand when tagalong case complained, *inter alia*, of being unable to obtain

previously produced materials and participate efficiently in discovery).  Moreover, the *Assurant*

Plaintiffs need not fear that discovery relating to the off-label uses of Neurontin is not sufficient

for their purposes.  The MDL Plaintiffs have served 261 document requests and 36

interrogatories that request – in every possible way and iteration – documents and information

concerning marketing and promotion, sales, FDA submissions, patents, forecasts, budgets, and

clinical and anecdotal evidence of efficacy and safety relating to Neurontin.  It is hard to imagine

that there is any aspect of discovery into the off-label uses of Neurontin that the MDL Plaintiffs

have not and will not pursue.  Accordingly, convenience and judicial efficiency are best served

by keeping *Assurant* in this MDL.

The *Assurant* Plaintiffs' dire predictions of falling into a black hole are also not justified.[1]

*See* Assur. St. Rep. at 4.  Staying the *Assurant* antitrust claims by no means stalls its case.  Even

were the Court to stay the entirety of the *Assurant* action pending the resolution of the pending

---

[1] While the *Assurant* Plaintiffs are correct that Defendants "requested that the Panel transfer *Assurant* Plaintiffs' case to MDL 1629," Assur. St. Rep.at 2, they overlook the fact that, had the case been transferred to the Neurontin Antitrust MDL instead, the entire case would doubtless have been stayed immediately.  In fact, by noticing this action for transfer to this Court, Defendants transferred the case to the venue where the *Assurant* Plaintiffs would be able to move forward with their consumer protection claims.

motions to dismiss, Assurant could still take part in discovery.  *See, e.g., In re Ford Motor Co. Bronco II Products Liability Litigation*, 1996 WL 148294 at *2 (E.D.La.) (staying proceedings related to tag-along actions until the core proceedings have been completed, but permitting counsel for the tag-along plaintiffs to participate in discovery and similar activities).  As a result, *Assurant's* claim that "[i]f a stay is granted, *Assurant* plaintiffs would not be prepared for trial upon the completion of discovery by the other plaintiffs in MDL 1629 or have had the opportunity to pursue the discovery necessary to fully develop the theory of the case," Assur. St. Rep.at 5, is simply not a concern.

The *Assurant* plaintiffs refuse to recognize the benefits to the parties, witnesses, and federal judiciary of consolidated proceedings.  They insist that their case be treated as a unique, stand-alone case rather than seeking to determine how best to take part in the MDL proceedings in which their case belongs.  Plaintiffs, upon transfer to the MDL, first insisted on an immediate response to their Complaint by Defendants (forcing Defendants to make an emergency motion for a stay), and now seek to escape this MDL altogether.  If every litigant in an MDL with allegations that differ in some way from the other cases in the MDL acted as *Assurant* Plaintiffs have, the benefits of MDL proceedings would cease to exist.

### Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' request for a suggestion of remand.  Instead, for the reasons discussed above and further set forth in Defendants' Stay Motion, Defendants respectfully request that the Court either stay the *Assurant* antitrust claims or sever and transfer them to the Neurontin Antitrust MDL.

10

Dated:  May 27, 2005

                                    DAVIS POLK & WARDWELL


                                    By:   s/James P. Rouhandeh
                                           James P. Rouhandeh
                                           James E. Murray

                                    450 Lexington Avenue
                                    New York, New York 10017
                                    (212) 450-4000


                                          - and -

                                    HARE & CHAFFIN


                                    By:  s/David B. Chaffin
                                          David B. Chaffin

                                    160 Federal Street
                                    Boston, Massachusetts 02110
                                    (617) 330-5000

                                    *Attorneys for Defendants Pfizer Inc. and*
                                    *Warner-Lambert Company*