UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------ x

In re: NEURONTIN MARKETING AND
SALES PRACTICES LITIGATION

: MDL Docket No. 1629
:
: Master File No. 04-10981

------------------------------------------------ x

THIS DOCUMENT RELATES TO:

: Judge Patti B. Saris

------------------------------------------------ x

LAURA ALLEN, et al. v. PFIZER INC., et al.,

Docket No. 05-10797-PBS

------------------------------------------------ x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

Defendants Pfizer Inc. and Parke-Davis, a division of Warner-Lambert Company, (together the defendants) by and through their counsel, hereby oppose Plaintiffs' motion to remand this case to the Superior Court of the Commonwealth of Massachusetts.

**PRELIMINARY STATEMENT**

The application of the jurisdictional provisions of the Class Action Fairness Act of 2005 (CAFA or the Act) to a complaint first served on defendants, and then timely removed, after the Act's effective date is a matter of first impression. See Pub. L. No. 109-2, 119 Stat. 4 (2005), codified at scattered sections of 28 U.S.C. §§ 1332(d), 1453. Here Plaintiffs do not dispute that their case falls within the Act's jurisdictional requirements. They nevertheless ask this Court to remand this case to state court based on an un-served complaint filed in state court before the passage of the Act.

Plaintiffs' Motion should be denied for four reasons. *First*, a majority of courts have concluded that a court should look to the date of removal – the date the action was commenced in federal court – and not the date that the plaintiff originally filed his complaint in state court – to determine whether the new provisions of a jurisdictional amendment apply to case properly removed to federal court. *Second*, this interpretation of CAFA's effective date would fulfill CAFA's express statutory purpose and legislative history: to provide for federal court consideration of significant, interstate class actions. See, e.g., 119 Stat. at 5 (CAFA § 2(b)(2)). *Third*, even if the effective date is based on when the action was commenced in state court, that date should be the date when the operative complaint was filed and served, both of which occurred after the effective date of CAFA. Fourth, applying CAFA here would promote judicial economy and prevent wasteful, duplicative proceedings in federal and state court because it would ensure that this case is properly consolidated with those already pending before this Court in In re Neurontin Marketing, Sales Practices and Products Liability Litigation, MDL Docket No. 1629.

**BACKGROUND & COUNTER-STATEMENT OF FACTS**

In February 2005, Congress passed the Class Action Fairness Act of 2005 (CAFA or the Act). Pub. L. No. 109-2, 119 Stat. 4 (2005); 28 U.S.C. § 1332(d)(2)(A). In order to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction," 119 Stat at 5 (CAFA § 2(b)(2)), Congress amended the jurisdictional provisions of 28 U.S.C. § 1332 to give federal courts subject matter jurisdiction over class actions in which the aggregate amount in controversy exceeds $5,000,000 and at

least one plaintiff is a citizen of a state different from any defendant. See 28 U.S.C. § 1332(d)(2)(A) & (6). The Act took effect on February 18, 2005 when the President signed it into law and by its terms applies to "any civil action commenced on or after the date of enactment of th[e] Act." 119 Stat. at 14.

More than a month later, on March 22, 2005, Plaintiffs first served Defendants with a complaint in this putative class action involving the marketing and sales practices of Neurontin – a subject with which the Court is familiar. The complaint served on Defendants had just been filed in Massachusetts state court on March 21, 2005 but was styled as the "First Amended Class Action Complaint." It raised claims on behalf of plaintiffs and a class of Massachusetts consumers under Massachusetts's unfair and deceptive practices statute, see Mass. Gen. Laws ch. 93A, §§ 2 and 9; Mass. R. Civ. Proc. 23, that are identical to those presently pending before this Court in In re Neurontin Marketing, Sales Practices and Products Liability Litigation, MDL Docket No. 1629.

Plaintiffs' Factual Background relies on the fact that they had originally filed a complaint in state court on December 23, 2004. Plaintiffs neglect to mention that they never served Defendants with a copy of this complaint. Thus, for all practical purposes and from the Defendants' perspective, that complaint was a nullity and this case therefore did not exist until after CAFA's effective date.

Plaintiffs also neglect to mention that on March 21, 2005 – again well after CAFA's effective date and on the same day that plaintiffs filed their amended complaint – they filed an *ex parte* motion in state court seeking to amend their complaint "by right." Motion at 1 (attached as Exhibit 1). In support of this *ex parte* motion, Plaintiffs "call[ed] the Clerk's attention to the fact that the Defendants have not yet served a

responsive pleading." Id. Of course, Plaintiffs had not served the Defendants and thus Defendants could not have been expected to file any responsive pleading in the matter.[1]

On April 20, 2005, over two months after the effective date of CAFA and within thirty days' service of Plaintiffs' amended complaint, Defendants commenced this action in federal court by filing a Notice of Removal with this Court and attaching a copy of Plaintiffs' amended complaint. See 28 U.S.C. § 1446(b). Defendants removed this action on the ground that this Court had original jurisdiction over the putative class action as provided for by CAFA because: (1) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (2) a member of the putative class of plaintiffs is a citizen of a state that is different from the states of citizenship of the defendants. See 28 U.S.C. § 1332(d)(2)(A) & (6).

On May 19, 2005, Plaintiffs moved to remand the case to state court. Plaintiffs do not contest the fact that CAFA's jurisdictional requirements are satisfied: that the aggregate amount in controversy in this putative class action will exceed $5 million dollars and that there is minimal diversity between the parties. Instead, Plaintiffs insist that CAFA does not apply because they contend the action was "commenced" upon the filing of the unserved, original complaint in December 2004.

---

[1] On March 23, 2005, two days after Plaintiffs filed the amended complaint and one day after Defendants were served with it, the state court ruled on Plaintiffs' motion. By endorsed order, the court noted that the motion was "unnecessary" but nonetheless "allowed" Plaintiffs' motion. Id. The court ordered Plaintiffs to file "the returns of service on both defendants on or before April 25, 2005." Plaintiffs filed a proof of service for Defendant Parke-Davis only on April 12, 2005.

**ARGUMENT**

I.  This Court Has Jurisdiction Under CAFA Because Courts Look To The Date Of Removal – Not The Date of Filing In State Court – To Determine Whether A Jurisdictional Amendment Applies

The application of CAFA's jurisdictional provisions to a complaint first served on defendants, and then timely removed, after the Act's effective date is a matter of first impression. "[A] clear majority of courts," however, have held that, for purposes of evaluating the effective date of amendments to the subject matter jurisdiction of federal courts, "a court must look to the date of removal, not the date that the plaintiff filed his original petition." Lindsey v. Meisenheimer, No. 97-116, 1997 U.S. Dist. Lexis 17784, at *1 (D. Kan. Sept. 24, 1997); see, e.g., Cedillo v. Valcar Enters. & Darling Delaware Co., Inc., 773 F. Supp. 932, 939 (N.D. Tex. 1991); Hunt v. Transport Indem. Ins. Co., Civ. No. 90-00041, 1990 WL 192483, at **2-6 (D. Haw. July 30, 1990); Gasper v. Nat'l Tea Co., Civ. A. No. 89-5168, 1990 WL 6031, at **1-2 (E.D. La. Jan. 24, 1990); Abernathy v. Consol. Cab Co., 169 F. Supp. 831, 832-34 (D. Kan. 1959); Casteel v. Great S. Trucking Co., 167 F. Supp. 435, 436 (E.D. Tenn. 1958); Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co., 166 F. Supp. 319, 320-24 (E.D.N.Y. 1958); but see Rhinehardt v. Cincinnati, Inc., 716 F. Supp. 7, 8 (E.D. Mich. 1989); Kieffer v. Travelers Fire Ins. Co., 167 F. Supp. 398, 401 (D. Md. 1958); Barron v. American Motorist Ins. Co., 170 F. Supp. 412, 414 (N.D. Tex. 1958). The reason is simple: interpreting the act's effective date in this fashion reaffirms the fundamental principle that for purposes of removal jurisdiction: "the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked" – the date of removal. Cedillo, 773 F. Supp. at 939; see, e.g., Pullman Co. v. Jenkins, 305 U.S. 534, 537-38 (1939); Westmoreland Hosp. Ass'n v.

Blue Cross, 605 F.2d 119, 123 (3d Cir. 1979). Because Defendants properly removed this case to federal court after CAFA's effective date, this Court has subject matter jurisdiction over Plaintiffs' case.

Three decisions interpreting the effective date of similar jurisdictional amendments are particularly instructive. In Cedillo, the court was forced to interpret an amendment, like CAFA, which expanded federal jurisdiction by giving federal courts supplemental jurisdiction over related state-law claims. See 28 U.S.C. § 1367(a). This amendment, again just like CAFA, stated that it applied to "civil actions commenced on or after" the date of its enactment. Cedillo, 773 F. Supp. at 739. The court concluded that the new amendments were "fully applicable" to the action (ostensibly commenced in state court well before the amendment) because the date on which federal jurisdiction was first "invoked" – the date of removal – was after the effective date of the statute. Id.; see also Lorraine Motors, 166 F. Supp. at 323 (holding that "commenced" means "actions commenced in [federal] District Court whether by original jurisdiction or by removal" on or after the effective date of statute amending minimum amount in controversy for diversity jurisdiction); Casteel, 167 F. Supp. at 436 (noting that "[i]t has long been well settled that the jurisdictional requirements must be met at the time when the federal court assumes jurisdiction of the case" and relying on treatise to conclude that "'the law in effect at the time of the application to remove controls'" (quoting 76 C.J.S. Removal of Causes § 2)). The court's reasoning in Cedillo demonstrates that interpreting the effective date of jurisdictional amendments to apply to the removal date – and not the original state court filing date – is appropriate not only when Congress restricts access to federal

jurisdiction by raising the jurisdictional minimum, but also when Congress expands the jurisdiction of the federal courts.

The situation presented in Abernathy is also directly analogous and shows that this interpretation of "commenced" with regard to a jurisdictional amendment's effective date is fair and principled in application to both plaintiffs and defendants. 169 F. Supp. at 831. In Abernathy, the plaintiff initially had filed a complaint in state court and sought recovery in an amount less than the then-applicable minimum ($3,000) for federal diversity jurisdiction. Id. at 1832. The following year, Congress raised the minimum for diversity jurisdiction to more than $10,000, and the plaintiff shortly thereafter amended his complaint to increase the value of his claim to $7,500. Id. Contending that the recent jurisdictional amendment was inapplicable because the plaintiff's action had been originally commenced in state court in 1957 under the prior jurisdictional minimum, the defendants removed the case to federal court. Id. The court, however, remanded the case, rejecting Defendant's contention and holding that the newly amended minimum applied to the case. Id. at 833-34. In doing so, the court relied on both the principle that "[r]emovability is determined as of the date when the petition for removal is filed and depends upon the case disclosed by the pleadings at that time" and the fact that Congress's intent in increasing the jurisdictional minimum was to limit access to the federal courts. Id.

Finally, and as the court in Lomax v. Duchow reasoned, Plaintiffs should not be allowed to take solace in the pre-CAFA filing of their original complaint because they failed to serve Defendants with that complaint until well after the statute's effective date. 163 F. Supp. 873, 874 (D. Neb. 1958). Facing similar language regarding the effective

date of an increase in the jurisdictional minimum for diversity jurisdiction, the Lomax court concluded that the new jurisdictional amendment could not apply to a case removed by the defendants because *both* the case "ha[d] been filed prior to the effective date . . . *and effective service of summons . . . ha[d] been completed prior to the effective date.*" Id. (emphasis added).  Here, Plaintiffs failed to serve Defendants with the original, pre-CAFA complaint before the Act's effective date.

II.     Congressional Intent Confirms This Interpretation of CAFA's Effective Date

Interpreting the term "commenced" to provide federal jurisdiction over Plaintiffs' case is not only consistent with the general principles of removal jurisdiction and the vast majority of cases interpreting the effective date of jurisdictional amendments, but it is also fully consistent with Congress's intent in enacting CAFA.  Congress's express purpose is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." 119 Stat. at 5 (CAFA § 2(b)(2)).  Numerous CAFA provisions also indicate an intent by Congress to expand federal jurisdiction and to encourage removal of class actions to federal court.  For example, (i) removal is permitted even though there is only minimal diversity – before, complete diversity was required, id. at 9 (CAFA § 4(a)); (ii) removal is permitted even if only one defendant removes – before, all defendants had to consent to removal, id. at 12 (CAFA § 5(a)); and (iii), the requisite amount in controversy can be satisfied by aggregating the claims of plaintiffs and putative class members – before, aggregation was not permitted, id. at 9 (CAFA § 4(a)).

The Act's legislative history likewise confirms that the purpose of the Act was to "encourage the exercise of federal jurisdiction over class actions." S. Rep. 108-123 at 45.

Thus, for example, both the House and Senate Judiciary Committees stated that it was their "intention with regard to each . . . exception[]" to federal jurisdiction under CAFA "that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption." Id. at 45; H.R. Rep. 108-144 at 38. Similarly, the Committees stated that the requirement of an aggregate amount in controversy of $5 million was "intended to expand substantially federal court jurisdiction over class actions," that this "provision[] should be read broadly, with a strong preference that interstate class actions be heard in a federal court," and that "the definition of 'class action' is to be interpreted liberally." S. Rep. 108-123 at 44, 48; H.R. Rep. 108-144 at 37. In addition, the Committees stated that "any factual assessments underlying the district court's jurisdictional determination" should be reviewed "de novo" on any appeal. S. Rep. 108-123 at 50; H.R. Rep. 108-144 at 43. The Senate Report also rejected the notion that there should be "a presumption that a plaintiff chooses his or her own court." S. Rep. 108-123 at 57. Rather, "the whole purpose of diversity jurisdiction is to preclude any such presumption by allowing state-law based claims to be removed from local courts to federal courts, so as to ensure that all parties can litigate on a level playing field and thereby protect interstate commerce interests." Id. In short, as both Committees explained, "the real harm to federalism is the status quo – leaving the bulk of class action cases in state court." S. Rep. 108-123 at 59; H.R. Rep. 108-144 at 26.

Interpreting the effective date of a jurisdictional amendment to apply to the date the action is removed to federal court, rather than the date the action is originally filed in state court, in light of Congress's intent, is also consistent with the relevant precedent regarding other amendments and Congress's intent to expand or narrow federal

9

jurisdiction. Thus, when – as in Lorraine Motors, Abernathy, Casteel, Hunt and Gasper – Congress enacts a statute narrowing federal jurisdiction, courts are consistent with that purpose by interpreting the amendment's effective date to apply to the removal date, and not the date the action was originally filed in state court, because it results in fewer cases being eligible for removal to federal court.  Similarly, when – as in Cedillo (interpreting "commencement" as applied to 28 U.S.C. § 1367's expansion of jurisdiction) and CAFA – Congress enacts a statute expanding federal jurisdiction, courts are consistent with that purpose by interpreting the amendment's effective date to apply to the removal date, and not the date the action was originally filed in state court, because it results in more cases being eligible for removal to federal court.

The overwhelming precedent regarding the effective date of jurisdictional amendments and CAFA's explicit purpose and legislative history stand Plaintiffs' "plain language" argument interpreting the word "commenced" on its head.  See Pls.' Motion at 6.  Moreover, when Congress has intended that a removal statute apply only to cases "commenced" in state court after the statute's effective date, it has explicitly said so.  Thus, in 1986, when Congress amended the removal statute to permit removal of an entire action that contains state law claims and a separate and independent federal law claim, Congress provided that the amendment would "apply with respect to claims in civil actions commenced *in State courts* on or after the date of the enactment." P.L. 99-336, § 3(b), 100 Stat. 633 (June 19, 1986) (emphasis added).  Congress did not add any such qualifying language here.  This Court should not interpret the statute as if it had.

Similarly, the Commentary to the United States Code Annotated regarding the 1988 amendment to 28 U.S.C. § 1332 (raising the jurisdictional minimum to $50,000)

supports this interpretation of CAFA's effective date. Explicitly noting a divergence in decisions by the lower courts, the Commentary approvingly cites Lorraine Motors and states that the "sounder" view is that "the moment that counts in removal situations is the moment of removal to federal court, not commencement in state court." It is a black letter rule of statutory construction that "Congress is presumed to be aware of . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." Lorillard v. Pons, 434 U.S. 575, 580 (1978). It must be presumed that Congress was aware that a clear majority of courts had interpreted "commenced" with respect to several jurisdictional amendments to mean the date the action was commenced in federal court upon the filing of the notice of removal when Congress used virtually identical language in CAFA. If Congress had meant for "commenced" to mean something different in CAFA, it would have said so. Cf. United States v. Nippon Paper Indus. Co., 109 F.3d 1, 4-5 (1st Cir. 1997) (It is a "basic cannon of statutory construction" that "identical words or terms used in different parts of the same act are intended to have the same meaning.").

Plaintiffs' reliance on isolated comments by legislators regarding the "retroactivity" of CAFA and earlier versions of CAFA that would have permitted the removal of state class actions upon certification is equally unavailing. See Pls.' Mot. at 7-11. Not only are these comments not relevant to the meaning of the word "commenced," but the limited application of CAFA – consistent with precedent and congressional intent – to cases timely removed after CAFA's effective date (let alone those not even served until after the Act's effective date) would hardly qualify as a "retroactive" application of the statute. See Garcia v. US, 469 U.S. 70, 76 (1984) ("In

surveying legislative history, we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill,'" and have "eschewed reliance on the passing comments of one Member, and casual statements from the floor debates.") (internal quotation omitted); see also Eldred v. Ashcroft, 537 U.S. 186, 210 n.16 (2003); NLRB v. Fruit & Veg. Packers & Whsmen., 377 U.S. 58, 66 (1964). Moreover, that Congress eliminated a provision in alternative versions of CAFA that would have further expanded federal jurisdiction over state class actions merely indicates that Congress did not want CAFA to apply to actions that had already been actively litigated in state court. And as Plaintiffs were eager to point out in state court, this case did not exist until after CAFA because Defendants had "not yet served a responsive pleading."

III.  **The Operative Complaint In This Case Was Filed and Served After CAFA'S Effective Date, Therefore The Tenth Circuit's Decision in *Pritchett v. Office Depot* Is Distinguishable And Applying CAFA Would Promote Public Policy**

Even if the effective date is based on when the action was commenced in state court, that date should be the date when the operative complaint was filed and served, both of which occurred after the effective date of CAFA. The Tenth Circuit's decision in Pritchett v. Office Depot, 404 F.3d 1232 (10th Cir. 2005), is therefore distinguishable and, Defendants respectfully submit, wrongly decided in light of the applicable precedent and Congress's express purposes to expand federal jurisdiction over class actions.[2] See

---

[2] Other courts have also rejected Defendants' contention that CAFA's jurisdictional provisions apply to actions properly removed to federal court after CAFA's effective date. See Hankins v. Pfizer Inc., CV 05-1797 (C.D. Cal. March 25, 2005); Smith v. Pfizer Inc., 05-cv-0112-MJR (S.D. Ill. March 24, 2005); Lott v. Pfizer Inc., 05-cv-0230-MJR (S.D. Ill. Apr. 7, 2005). These decisions are unpublished, similarly distinguishable on the ground that they did not involve complaints filed and served after CAFA's effective date, and, Defendants respectfully submit, also wrongly decided. The issue is also currently pending in the District of Massachusetts in Kwaak v. Pfizer Inc., 05-CV-10591-NMG and Natale v. Pfizer Inc., 05-CV-10590-WGY.

Pls.' Mot. at 11-12. To begin with, <u>Pritchett</u> did not involve a plaintiff who filed and first served the defendant with the operative complaint in the case after CAFA's effective date. Instead, the operative complaint in <u>Pritchett</u> had been filed in 2003, certified on behalf of a class in 2004, and set for trial only a few days before the defendant removed the action to federal court. 404 F.3d at 1233. Moreover, the defendant's removal of the action in <u>Pritchett</u> was patently untimely, occurring years after the defendants were served with the complaint. <u>See</u> 28 U.S.C. § 1446(b).

Here, Defendants have fully complied with the thirty-day requirement for removal under § 1446(b) and simply ask this Court to follow the majority of courts interpreting the effective date of jurisdictional amendments and congressional intent by holding that CAFA applies to a complaint that was timely removed, and indeed not served on Defendants until, after the Act's effective date. The "public policy considerations" identified by the <u>Pritchett</u> court are therefore wholly inapposite because interpreting CAFA to apply to this action would not allow "cases [to be] plucked from state court on the eve of trial." 404 F.3d at 1238. Indeed, applying CAFA here would promote judicial economy and prevent wasteful, duplicative proceedings in federal and state court because it would ensure that this case is properly consolidated with those already pending before this Court in <u>In re Neurontin Marketing, Sales Practices and Products Liability Litigation</u>, MDL Docket No. 1629.

Given the overwhelming precedent regarding the proper interpretation of the effective date of jurisdictional amendments, the legislative history and purpose of CAFA, and the fact that the operative complaint in this action was filed – and defendants were first served – after CAFA's effective date, Plaintiffs seek comfort in case law reciting

13

Defendants' burden on removal and state procedural rules (and federal case law applying them). See Pls.' Mot at 12-16. This reliance is misplaced and contrary to the "primary purpose of the bill – to allow the removal of more interstate class actions to federal courts, where they are more appropriately heard." S. Rep. 108-123 at 64; see H.R. Rep. 108-144 at 47. It is again worth noting that Plaintiffs do not contend that CAFA's jurisdictional provisions are not satisfied; rather Plaintiffs argue that the amendment should not apply to this action based on their reading of the word "commenced." But it is black-letter law that "Federal law obviously determines whether the elements of removal jurisdiction have been satisfied." 14B Wright, Miller, & Cooper, Federal Practice & Procedure §3721 at 301 (1998); see Chicago, Rock Island & Pac. R.R. v. Stude, 346 U.S. 574, 580 (1954) (noting interpretation of removal statute is "a question of the construction of the federal statute . . . , and not the state statute" and that "the latter's procedural provisions cannot control the privilege of removal granted by the federal statute" (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104 (1941)). Here the proper interpretation of CAFA's effective date shows that the term "commenced" refers to the removal date to federal court, and not the date the action may have been originally filed in state court. In any event, this action was not commenced until the filing and service of the operative complaint, both of which occurred after the effective date of CAFA.

## CONCLUSION

Defendants respectfully request that Plaintiffs' motion be denied.

                           **DEFENDANTS PFIZER INC. and PARKE-DAVIS, a DIVISION of WARNER-LAMBERT COMPANY,**

                           *s/David B. Chaffin*
                           David B. Chaffin
                           BBO No. 549245
                           Hare & Chaffin
                           160 Federal Street, 23rd Floor
                           Boston, MA 02110
                           (617) 330-5000

                           *Of Counsel:*
                           James P. Rouhandeh, Esq.
                           James E. Murray, Esq.
                           Davis Polk & Wardwell
                           450 Lexington Avenue
                           New York, NY 10017
                           (212) 450-4000